JOHN D. POYTHRESS ET AL. v. MOBILE & OHIO RAILROAD COMPANY ET AL.

[46 South., 139.]

1. MUNICIPALITIES.   Closing streets.   Code 1892, § 2945 (Code 1906, § 3336).   Compensation

A municipality is not required before closing a street, as authorized by Code 1892, § 2945 (Code 1906, § 3336), to compensate one having no property abutting on the portion of the street to be closed, although he have property on another part of the street.

2. SAME.   Injunction.   Special damage.

A person who will suffer special damage by the closing of a street cannot enjoin the municipality from closing it, where in the judgment of the municipality authorities, public safety demands such action.

FROM the chancery court of Lauderdale county.

HON. JAMES L. McCASKILL, Chancellor.

Poythress and another, appellants, were complainants in the court below; the railroad company and the city of Meridian, appellees, were defendants there. From a decree in favor of defendants the complainants appealed to the supreme court.

The complainants were the owners of lot 12, of block 25, of the Caldwell survey of the city of Meridian, on which they had a storehouse and were engaged in the mercantile business. The storehouse faced Second street to the south and Twenty-Seventh avenue on the east. The tracks of the Mobile & Ohio Railroad Company crossed Twenty-Seventh avenue and Second street just opposite the corner of the store, running diagonally in a northeasterly and southwesterly direction, and the railroad company had maintained a crossing on Twenty-Seventh avenue for many, more than ten, years. The railroad company owned a tract of land east of Twenty-Seventh avenue and south of its right of way on which it desired to construct roundhouses, a coal

chute, and a large number of side tracks; and in order to more easily approach this lot it had purchased block 31, as shown by the accompanying plat, and across block 31 it proposed to lay its tracks. In order to carry out its plans the railroad company proposed to the city that, if the city authorities would permit the closing of Caldwell street and the closing of that portion of Twenty-Seventh avenue between the northern boundary of the right of way at the intersection of Twenty-Seventh avenue and Second street, and the northern line of St. Andrews street, and would provide suitable approaches for an overhead bridge for wagons and pedestrians, the railroad company would at its own expense construct an overhead bridge across the right of way of the railroad company at Twenty-Ninth avenue. Accordingly the city passed the following ordinance:

"Whereas, the Mobile & Ohio Railroad Company has recently acquired by purchase certain property adjacent to its existing yards and tracks in the city of Meridian, Mississippi, and bounded, generally speaking, by St. Andrews street on the east and Twenty-Seventh avenue on the northeast, for the purpose of enlarging its facilities for repairing, coaling, and generally caring for its locomotives and other rolling stock; and

"Whereas, it is absolutely necessary in carrying out of these plans for the addition to its facilities in the city of Meridian to construct certain tracks across Twenty-Seventh avenue, as it now exists at this point; and,

"Whereas, the existing tracks, as well as those necessary to be constructed, will make the crossing of the Mobile & Ohio Railroad yards at Twenty-Seventh avenue dangerous to pedestrians and others traveling over and along side said crossing; and

"Whereas, the Mobile & Ohio Railroad Company is the abutting owner on said Twenty-Seventh avenue, between the west side of the Mobile & Ohio railroad tracks on said avenue and the east side or end of said avenue, and as said abutting owner is desirous that said avenue be closed; and

"Whereas, the officials of the Mobile & Ohio Railroad Com-

pany proposed and hereby agree to construct an overhead cross-
ing or bridge, which shall be constructed under plans subject to
the approval of the engineer or other competent officer of the
city of Meridian, commencing at or near the intersection of
Second street and Twenty-Ninth avenue, to a point approxi-
mately four hundred feet east of the tracks of the Mobile &
Ohio Railroad Company at this point, it being the intention to
hereby agree to span said railroad company's tracks by the
said overhead bridge as aforesaid, the city agreeing to furnish
the right of way necessary for the approaches on either side
of the railroad tracks, and in consideration of the premises, and
the fact that the said railroad company will construct said afore-
said bridge at the place aforesaid: Therefore

"Section 1. Be it enacted by the mayor and boards of council-
men and aldermen of the city of Meridian, upon the construc-
tion and completion of the aforesaid bridge, the said Twenty-
Seventh avenue be and is hereby abandoned and closed as a
highway in the said city from the east line of the Mobile & Ohio
Railroad Company's right of way and other property to the west
line thereof, or that part of the Mobile & Ohio Railroad Com-
pany's property in the said city crossed by the said Twenty-
Seventh avenue.

"Sec. 2. Be it further ordained that this ordinance take effect
from and after its approval and publication as required by law
in this behalf."

After the adoption of this ordinance complainants filed their
bill praying an injunction alleging in substance the following
grounds: First, that the mayor and the boards of councilmen
and aldermen were without power to adopt the said ordinances;
second, that the municipality has not (at the time of the filing
of the bill) furnished the approaches for the bridge at Twenty-
Ninth avenue as provided by the ordinance, and is without
power or authority to furnish same, and does not intend to
furnish said approaches; third, that the municipal authorities
are proceeding to enforce the provisions of said ordinance by

vacating and closing that portion of Twenty-Seventh avenue described in said ordinance; fourth, that notwithstanding the conditions upon which alone the vacation and closing of such portion of said Twenty-Seventh avenue as is described in said ordinance was granted have not been complied with, the said defendant Mobile & Ohio Railroad Company is proceeding to erect obstructions in and upon said avenue, by and with the tacit consent of the said mayor and boards of councilmen and aldermen. The principal grounds of damage as alleged in the bill are that the closing of Twenty-Seventh avenue would require complainants to travel further in going to and from their place of business, since they lived on the south side of the railroad, and that complainants would suffer loss of trade by reason of the inconvenience to their customers in shutting off the approach along Twenty-Seventh avenue from the south, and compelling their customers to go by a more circuitous route by way of the overhead bridge on Twenty-Ninth avenue. All the material allegations of the bill were denied.

The points made by defendants were that complainants had no right to maintain their suit in chancery, first, because they were not abutting owners of that portion of the street proposed to be closed, entitling them to object in this or any other proceeding; second, because complainants were only a part of the general public, and had not alleged or proven any special damages to themselves different in kind or greater in degree than that suffered by the general public, such as would entitle them to proceed in private suit to abate a public nuisance; third, that, inasmuch as the closing or obstruction of the street complained of was a public nuisance, if a nuisance at all, no one but the public authorities could proceed in the courts to have it abated, without showing special damages different in kind and greater in degree than those suffered by the public generally.

The Annotated Code of 1892, § 2945, gives municipalities the authority to "close and vacate any street or alley, or any portion thereof." Code 1906, § 3336, adds the following to the above

section: "But no street or any portion thereof shall be closed or vacated except upon due compensation being first made to the abutting landowners upon such street or alley for all damages sustained thereby."

The following is a plat of the locality in question:

a, b—Enclosed part of Twenty-Seventh Avenue.
x, y—Overhead bridge.

*Amis & Dunn;* for appellants.

On the trial in the chancery court, the defendants contended that complainants had no right to maintain their suit in chancery: First because they were not abutting owners on that portion

of the street proposed to be closed, as entitled them to object in
this or any other proceeding, and, second, because complainants
were only a part of the general public, and had not alleged
or proved any such special damages to themselves different in
kind or greater in degree than that suffered by the general pub-
lic, much as would entitle them to proceed in a private suit to
abate a public nuisance.   Third, inasmuch as the closing
or obstruction of the street complained of was a public nui-
sance, that no one except the public authorities could proceed in
the courts to have it abated, without showing special damages
different in kind and greater in degree than those suffered by the
public generally.

Defendants restrict the rights of a land owner abutting on a
street within limits much too narrow.   Counsel insist that al-
though the complainants here own lands abutting on Twenty-
Seventh avenue at a point near that portion of the street pro-
posed to be closed, they have no greater or different rights
in or to Twenty-Seventh avenue, as a whole, than have the gen-
eral public.   They insist that the general public has an ease-
ment in the street as a whole; that the general public has a right
to pass over the street on foot or in vehicles from end to end,
and that the complainants in this case have the same right, but
that they have no other or different right in it.   That the mere
fact that they own lands abutting on the street, and that they
conduct a store located on these lands, does not change their
status in the matter.

On the contrary, our contention is that a street in a city is
one entire thing from end to end.   That Twenty-Seventh avenue
in the city of Meridian is one indivisible entity from the north-
ern limits of the city to the southern limits, and that every per-
son owning land abutting on Twenty-Seventh avenue, has, as an
abutting owner, on that particular street, a peculiar right and
interest in that street as an entirety, different in kind and
greater in degree to that of any other member of the general pub-
lic whatever.   The right of the general public is limited solely to

the right to pass over a street, and all the interest any member of the general public has in a particular street is that it be kept in a condition for him to pass over whenever he sees fit. The reputation of the street, whether good or bad, the width of the street, whether wide or narrow, the grade of the street, whether smooth or rough, the appearance of the street, whether beautiful or ugly, are matters which do not, in the least, concern the general public, except as a matter of pride or patriotism. But to the owner of property abutting on a particular street, all these matters are matters of the most vital financial and personal concern. Property on a street with a good reputation is much more valuable than that on a street which has a bad reputation. Property on a wide, beautiful and even street is much more valuable than that located upon an ugly, narrow, rough lane or alley. Property located upon a street which is easy of access—along which pedestrians and vehicles may pass easily and without danger, is far more valuable than is property located upon a street in an out-of-the-way, inaccessible part of the city. These are elements that daily enter into every real estate transaction in the country. Elliott on Roads and Streets, sec. 120; 111 Pa. St., 565; 67 Me., 460; 17 R. I., 799; 101 Ind., 200; 133 Ind., 331; 60 Minn., 62; 109 Mass., 292; 87 Pa. St., 339; 18 Ohio, 18; 9 Iowa, 450; 114 Ind., 309; 96 U. S., 716; 91 Ind., 493; 12 Ill., 29; 6 Pet., 431; 21 N. Y., 474; 34 Atl. Rep., 46.

Another trouble with the argument of counsel for defendants is, that they insist that the complainants have not alleged or proven any such special damages to themselves different in kind and greater in degree than that suffered by the general public. As to what sort of damages are different in kind and greater in degree than that suffered by the general public, there is, as we have hertofore contended, no rule or principle well established in the books by which this may be determined. However, there are many cases in the books illustrative of what sort of damages different in kind and greater in degree than that

suffered by the general public, will entitle a private person to maintain a suit to abate a public nuisance. Among these, the court will find the following cases instructive:—1 Am. St. Rep., 835; 23 Am. St. Rep., 673; 53 Am. St. Rep., 607; 24 South., 745; 32 South., 144; 39 South., 560; 56 Am. St. Rep., 1; 103 N. Y., 10; 140 Ala., 268; 131 Ala., 286; 34 South., 624; 52 Am. St. Rep., 860; 58 Am. St. Rep., 33; 47 Am. St. Rep., 627; 14 Am. St. Rep., 923; 57 Am. St. Rep., 695 to 701 and note.

It is also well settled by the authorities that a nuisance may be both public and private, at the same time, in which case, the private individual, damaged by the continuance of the nuisance, may maintain a private action for the abatement thereof, notwithstanding the nuisance may be also a public one. *Whitfield v. Rodgers*, 26 Miss., 84; *Wylie v. Eylward*, 23 Am. St. Rep., 673; Wood on Nuisance, sec. 649.

The facts of this case clearly and unmistakably show that the closing of Twenty-Seventh avenue, as proposed by the railroad company and the city, will have the effect to depreciate the value of the complainants' property. That it will cut off from their customers access to their store, and thereby greatly depreciate the business that complainants will be able to do as grocery merchants, at their place of business.

Another defect in the argument of counsel for defendants, in the court below, is this, to-wit: that complainants being private citizens, and having shown no such special injuries or damages different in kind and greater in degree than that suffered by the general public, they can not maintain a private suit to abate a public nuisance; but that they must look to the public authorities having jurisdiction of the streets, to abate the nuisance. The trouble with this argument is that they admit that the obstruction or closing of the street is a public nuisance. The very public authority, whose duty it is to proceed to have public nuisances in the streets abated, comes into court admitting that a public nuisance exists, and not only declines and refuses to proceed to have the nuisance abated; but, on the other

hand, insists that the nuisance remain and proposes to deny to one of its private citizens the right to proceed. The proposition is monstrous. Here the city of Meridian joins in a scheme with the Mobile & Ohio Railroad Company, a private corporation, to create what is concededly a public nuisance and then comes into court and seeks to prevent a private citizen from doing that which it was the duty of the municipality to do itself.

In the case of *Douglas* v. *City of Montgomery,* 118 Ala., 599, a case very similar to the one at bar, decided by the supreme court of Alabama, and reported in 24 South., 745, HARALSON, Justice, speaking for the court holds the following language:

"Ordinarily, the city is the proper party to redress a wrong of the character here complained of, but in this instance, it is the main actor in the commission of the wrongs complained of for the abandonment and destruction of the park. It is to be presumed, it would not file a bill to declare void an act which, by solemn ordinance, it had itself just done. Individuals damaged by such action, therefore, were driven to private action for the maintenance of any rights in the premises."

In this case the facts are stronger. The city not only confederated with the railroad company to commit the nuisance, but when joined in the suit in this behalf, it appeared in court and defended the same vigorously, denying or attempting to deny, to the complainants the right to maintain this suit, on the ground that complainants can not sue as private persons to abate a public nuisance.

*Miller & Baskin,* for appellee railroad company.

As we understand from the brief of learned counsel for appellant, the real question involved in this case is one of law and not of fact, and the principles which control and govern this case are not new and can be succinctly stated as follows:—If the complainants damages are special, peculiar and direct, they have a right to maintain their bill; if general and indirect or

such as are suffered by the community at large, they have no right to relief. This is no new question, but one that has undergone adjudication by the English and American courts. The only proposition is the application of the principles of law to the facts of this case, thus determining whether the complainants' damages are general or special.

Our examination of the authorities leads us to the conclusion that there is a difference of opinion between the courts of England and the courts of America; that since the announcement of the doctrine of *Smith* v. *City of Boston,* 7 Cush., 254, the principles governing the instant case have undergone much examination, re-examination and analysis, and the great weight of authority has upheld the doctrine announced by that eminent jurist, Chief Justice Shaw, when he announced, that the discontinuance of a part of a street in a city by order of the mayor and aldermen, whereby the value of the land abutting on other parts of the street and on neighboring streets is lessened, is not a ground of action against the city by the owner of such land if still accessible by other public streets.

The appellants are not even abutting owners on Twenty-Seventh avenue, or of that portion which was ordered to be closed or discontinued by the ordinance complained of in the bill, as it is not disputed that the only portion of the avenue that was ordered closed belonged exclusively to the railroad company on both sides of said avenue, and that the only damages claimed by appellants are such as flow from the right of going over and along the avenue in reaching their place of business, and the inconvenience of their customers in being deprived of the right to use the avenue in order to reach complainants' store. There is no pretense that these customers can not reach the store by other streets and avenues nor is there any pretense that the complainants cannot use Second street in front of the store and the unclosed portion of Twenty-Seventh avenue to travel over all the streets and highways of the city.

In the case at bar, by reading the ordinance in this record, it

will be seen, that the purpose of the municipal authorities was to divert travel from Twenty-Seventh avenue to Twenty-Ninth avenue, just four hundred feet west, and to provide for a safe and convenient passageway over said Twenty-Ninth avenue, thus avoiding the danger incidental to Twenty-Seventh avenue, the railroad company covenanting to expend large sums of money in building a bridge, besides the necessary expenses incidental to the construction of the same; hence we submit, that not only the public convenience, but also the *public safety seemed to dominate* the appellee railroad company and its co-defendant, the municipality, in passing the ordinance complained of by the appellants.

This court has announced in *Green* v. *Lake,* 54 Miss., 545, that to abate a public nuisance requires the public authorities to move, and a private action, either at law or in equity, will not lie unless the plaintiff has sustained some special damages, citing with approval:—*Bigelow* v. *Hartford Bridge Co.,* 14 Conn., 565; *Baxter* v. *Winooski Turn.Pike Co.,* 22 Vt., 114, 121, and *Smith* v. *Boston, ubi supra.*

The street in front of plaintiff's property remained intact, and from this portion of the street the plaintiff still had free communication with the entire system of the highways; the only complaint is, that the distance required to be traveled to reach his property in some directions had been increased and that travel in front of his premises thereby had been diverted, trade diminished and the value of his property lessened. These facts bring the case squarely within the principles of the authorities. If the result is a hardship to the plaintiff, it is a hardship which is suffered by all of the numerous owners upon the portion of the street not discontinued. This fact alone has been held to make the plaintiff's damage "general" in the sense which excludes recovery.

See also *Dantzler* v. *Indianapolis Union R. Co.,* 141 Ind., 604, also reported in 50 Am. St. Rep., 343, and 34 L. R. A.,

769; *Heller* v. *Atchison T. & S. F. R. Co.,* 28 Kan., 625; *Davis* v. *Hampshire County,* 153 Mass., 218, 11 L. R. A., 750.

It is quite commonly held, that although one public way to property is closed, if there is another left open, the property owner sustains no actionable damage. *Coster* v. *Albany,* 43 N. Y., 399; *Fearing* v. *Irwin,* 55 N. Y., 486; *Gerhard* v. *Seekonk River Bridge Commissioners,* 15 R. I., 334; *Polack* v. *San Francisco Orphan Asylum,* 48 Cal., 490; *King's County F. Ins. Co.* v. *Stevens,* 101 N. Y., 417.

The ordinance passed by the municipal authorities of Meridian should be permitted to be carried out, and the public protected in a safe passage-way over the railroad tracks, and the judgment of the municipal authorities in extending this protection to the public should be vindicated.

*Neville & Wilborn,* for appellee, city of Meridian.

It is manifest from the proof that the crossing was very dangerous and that the overhead bridge would inure not only to the benefit of the public but to the benefit of the complainants as well. It is clear that the object of the ordinance was not for the purpose of putting the Mobile & Ohio Railroad Company in possession of the property, though as a matter of fact that company, being the owner of all the property abutting on the closed section of the street, would come into possession of it, as a matter of course, upon its being closed. The only purpose of the municipality was to change the location of a railroad street crossing from a very dangerous place to another point only four hundred feet distant, where a safe and desirable overhead bridge could be obtained. The ordinance does not contemplate that the railroad company shall do anything more than lay tracks across the streets, and that the street should be closed only when the overhead bridge should be first provided.

The control and regulation of the crossings of streets and avenues by railroads is necessarily a part of the police power of the municipality which it is bound to exercise for the good of

all the people; and the municipality should be permitted to exercise a wide direction in abandoning dangerous crossings.

Appellants are not entitled to any relief whatever as against the city of Meridian for the following reasons, to-wit:

First. Appellants have failed to show that the city has done any illegal act giving them any just cause of complaint.

Second. Appellants are not abutting property owners within the meaning of the law entitling them to any compensation for the closing of the street or the laying of the tracks across it.

Third. Appellants in any view of the case, have not shown that they have suffered any special damage different in kind from, or greater in degree than that sustained by the public in general and therefore have no right to maintain this suit.

MAYES, J., delivered the opinion of the court.

Annotated Code 1892, § 2945 (Code 1906, § 3336), empowers the municipality to vacate any street, or alley, or any portion thereof. This controversy arose under the law as it stood under the Code of 1892; but, even if this were not the case, Pothress is not an abutting landowner upon this street, entitling him to have compensation first made to him before the closing of the street, within the meaning of Code 1906, § 3336, as he owns no property abutting the closed portion. *Cram* v. *City of Laconia,* 71 N. H., 41, 51 Atl., 635, 57 L. R. A., 282.

We are unwilling to hold that a municipality cannot close a street, when in its judgment it is for the public good. In such case the individual right of the citizen must yield. The ordinance providing for the closing of this street was passed, as the ordinance declares, because the municipal authorities believed that the safety of the public demanded it. Under these conditions it was in the power of the municipality to order the street closed. If the complainants have suffered any special damage by the closing of this street, not shared in by all the public, they have recourse against the municipality; but, in the meantime, it is within the power of the municipality to close the street, if

in the judgment of the municipality it is dangerous to pedestrians and others, and this can be done without interference to Poythress. To deny the municipality this right would be to deny to it the power to exercise one of the most important protective duties that it owes to the public.

The case of *Laurel v. Rowell*, 84 Miss., 435, 36 South., 543,. is quite distinct from the case made by this record. In the case above cited it was not shown that there was any public necessity for the closing of the alley, and, the complainant in that case being an abutting owner, the court said that the action of the mayor and board of aldermen was unwarranted.

*Affirmed.*