CURTIS v. CHARLEVOIX GOLF ASSOCIATION.

1. INJUNCTION — EQUITY — NUISANCE — PARTIES — PUBLIC EASEMENTS—HIGHWAYS AND STREETS—PURPRESTURE.
    The unlawful obstruction of a public street is, as a rule, an invasion of public rights which can be redressed only at the instance of public authorities, except in unusual cases when some special or particular injury results from the wrong, different in kind and in degree from that which affects the public.

2. MUNICIPAL CORPORATIONS—STREETS—VACATING.
    It is not necessary, as a preliminary to vacating a city street under 1 Comp. Laws, § 2780 (3 How. Stat. [2d Ed.] § 6001), that a petition be filed with the common council: the council has plenary power by virtue of the statute and may act on its own motion.

3. SAME.
    And its action in vacating a public street was discretionary. That the action was at the request of an abutting owner to whom the property reverted, has no tendency to show fraud, illegality, or that the proceedings were taken for ·private benefit.

4. SAME—PUBLIC OFFICERS—PRESUMPTION.

It will be presumed that public officials act from honest motives and that they observe their obligations.

5. NUISANCE—INJUNCTIONS—EQUITY—CONSPIRACY.

The court of chancery exercises its jurisdiction to enjoin a nuisance only in extreme cases in which the right to relief is free of all substantial doubt, or after the right and the question of nuisance have been settled on the law side.

Appeal from Charlevoix; Mayne, J. Submitted October 7, 1913. (Docket No. 4.) Decided December 20, 1913.

Bill by John Curtis and others against the Charlevoix Golf Association for an injunction and other relief. From a decree for complainants, defendant appeals. Reversed.

*Ira G. Moser*, for complainants.

*R. W. Kane*, for defendant.

STEERE, C. J. The bill of complaint was filed in this suit on July 29, 1911, to obtain an injunction restraining defendant from occupying and using, for other purposes than as a highway, or in any manner interfering with public travel over and along a certain described portion of Central avenue in the city of Charlevoix, Mich.

Defendant is a foreign corporation owning the land adjacent to and on each side of the strip in question and now claims title to the same as an abutting owner by virtue of that portion of Central avenue having been vacated.

Central avenue became a highway through the laying out and platting of Lindsay Park addition to the village (now city) of Charlevoix on April 12, 1894, and has since that time been open to travel and used by the public as desired for a thoroughfare. Shortly

prior to the time of filing this bill, action was taken
by the common council of the city of Charlevoix look-
ing to the vacation of that portion of said avenue
lying between Elm street and State street. Follow-

ing this defendant claimed ownership of the property
and gave notice of its intention to inclose the same
and forbade the public from using it as a highway.

The annexed diagram of Lindsay Park addition may help to an understanding of the matter in controversy.

Complainants reside on the north side of State street in the vicinity of where Central avenue intersects said street. Curtis and Marsa own the lots upon which they reside. Defendant McCourtney is a tenant holding the property where he resides under a lease, the date of which is not given, for a term of five years. Central avenue extends in a northeasterly and southwesterly direction through Lindsay Park and lies entirely within its limits, terminating at its northerly extremity on State street and at its southerly end on Chicago street, which are boundary streets of said addition at those extremities. Defendant owns most of the northeasterly portion of Lindsay Park addition and has chiefly made use of the same, for 12 years or more, as a golf links. At the time the addition was platted and its streets dedicated, it was thought the location would become a popular summer resort resulting in a ready demand for lots upon which to erect cottages. As a part of the scheme for its development, there was planned and built a large summer hotel, called "the Inn," located on the southeasterly edge of the addition near the shore of Pine Lake, convenient to the Pere Marquette railway station. This hotel was built in 1898 and has been used since as a summer resort hotel, accommodating a large number of guests each year. Convenient to it and upon the addition in question defendant laid out golf links which have been popular with and extensively used by members of the defendant association and others. Lots upon said addition have not apparently found a ready sale. The addition contains about 403 lots and is separated by streets into 15 blocks. Block No. 1 on the westerly side of the addition, nearest the center and business portion of the city, is occupied and used largely for residence

and business purposes. The balance of the addition is owned by defendant or the Central Land Company, whose interests are closely allied, or by a few parties who have bought lots for the purpose of erecting summer cottages. It is stated, among other things, in a stipulation filed in the case that—

"Lindsay Park, at the date the bill was filed in this suit, did not have any paved street, nor are there any buildings located on Central avenue. Dixon avenue is now being paved and the paving continued to the railroad. Dixon avenue and Chicago avenue, being practically parallel streets, are the only ones upon which sidewalks are located at the date of the hearing."

State street, on the north side of which complainants reside, is the main traveled thoroughfare between Charlevoix and Petoskey and, prior to the platting of Lindsay Park, was called the Emmet and Grand Traverse State road. Chicago avenue was also in existence prior to said platting. Dixon avenue is one of the main streets of the city leading from the railway and hotels toward the business center and stated to be "perhaps the heaviest traveled aside from Bridge street." Complainants are none of them abutting owners on Central avenue and own no property in said addition.

Complainants in their bill, filed July 29, 1911, make no mention of any vacation proceedings by the common council of the city, and their solicitor reiterates in his brief that they did not and do not recognize or attack them, stating their position to be that the attempted proceedings "were null" and "there was nothing to attack, and the golf people stand out as plain, simple trespassers from the beginning." Defendant by its answer, filed August 7, 1911, sets up certain proceedings of the common council vacating the portion of Central avenue in dispute and claims to be the owner thereof by virtue of being the abutting owner of the land on both sides of the

vacated highway. On August 14, 1911, a replication in usual form was filed by complainant.

No further steps appear in the case until April 29, 1912, when by consent of parties defendant filed a supplemental answer stating, as matter which had arisen since the foregoing proceedings were filed, that the first proceeding to vacate said avenue, referred to in defendant's original answer, having been challenged as invalid, new proceedings to vacate the disputed part of Central avenue and other streets in Lindsay Park had since been taken and perfected by the common council of the city on its own motion. These proceedings are set forth in its amended answer. Not admitting the invalidity of the original proceedings, defendant asked that the subsequent ones so stated in the answer be considered in determining the issues in the case.

On May 15, 1912, a special replication to said supplemental answer was filed by complainants, alleging amongst other things that the—

"Common council of the city of Charlevoix, unmindful of its duty as trustee for the general public of all public streets in the city of Charlevoix, and its further duty to keep said streets open and in repair for public travel, did and are confederating with said defendant to deprive the public and your replicants of a much used and needed street and to vacate and close said street for the especial and exclusive use of said defendant for a playground, * * * well knowing the facts that Central avenue was a much used and necessary public highway and improvement, and that the same should not and could not be taken from the public and given over to the defendant for any exclusive purpose whatever, resorted to the subterfuge of vacating said avenue under the forms of law, for the sole purpose of depriving your replicants and the general public of said highway, and for the sole purpose of turning over or donating said highway to the defendant for its sole and exclusive use as a playground."

On first impression this would seem to savor of an attack on said proceedings, but it is said in complainants' brief to be simply pointing out that defendant has failed to make, on its part, the showing that it "had the right to occupy the portion of Central avenue in controversy in this case."

The municipality of Charlevoix is a city of the fourth class, incorporated in 1905. It is shown that the proceedings of the council were not based upon any formal petition. On October 18, 1910, the city attorney laid before the council two letters received by him from the land agent of the Central Land Company, one of the owners of Lindsay Park, asking him to present the matter in proper form and to secure resolutions for closing certain streets and parts of streets in said addition. With the letter was a blueprint map indicating what was desired.

The council thereupon adopted a resolution stating it was deemed advisable to vacate the streets and parts of streets referred to, fixed the evening of November 22d following as the time when the council would meet and hear objections, and directed that notice of such meeting be published not less than four full weeks before that time in a newspaper published and circulated in the city of Charlevoix. This publication was made. On the 22d of November, 1910, there was no quorum of the council present, and the meeting stood adjourned until its next regular meeting, which was on December 6, 1910. At that time, no objections having been offered, a resolution was unanimously adopted vacating certain streets in Lindsay Park, including the portion of Central avenue in question. This resolution recited the proceedings already had, stated that no one appeared to object to the proposed action, and concluded with a declaration that certain streets, described in detail, "be and the same hereby are vacated, discontinued, and abolished."

The next steps disclosed by the record were on April 18, 1911, at which time a petition was filed by 112 citizens of Charlevoix protesting against the closing of any portion of Central avenue and asking the council to rescind their previous resolution vacating the same. This was referred to the committee on streets. Following this, and at the instance of a member of the council, a counter petition was presented, signed by complainant McCarty and 38 others, stating that certain land in Lindsay Park had been secured for a street 100 feet west of the portion of Central avenue proposed to be vacated, which would afford a sufficient outlet for the travel theretofore passing over Central avenue. On June 6, 1911, the committee reported that the proposed donation of land by defendants would furnish a street from Elm to State streets which would be a jog of only 100 feet further west at Elm street, and running north would at its intersection with State street be about 150 feet west of Central avenue intersection; also reporting that they had interviewed a number of petitioners who acquiesced in this and agreed that such a street would meet the needs of the public and afford sufficient outlet for the travel in that vicinity. The report concluded with a recommendation that the donation of said new street by its owners be accepted. This report and recommendation were accepted and adopted by resolution of the council. On the 18th day of July, 1911—

"The street committee presented deeds to the city for land now used for street purposes, as a substitute for that part of Central avenue as was closed last winter, and reported the same has been opened as a street."

On the 26th of September, 1911, the council again took up the matter, and in a resolution reciting that a suit had been commenced in which some question

had been raised as to the validity of the resolution previously passed vacating said streets and parts of streets, proceeded to again take action to vacate the same streets under the provisions of chapter 88, 1 Comp. Laws, relative to cities of the fourth class. The various steps taken ended with a resolution, unanimously adopted October 31, 1911, containing various recitals and declaring that in the opinion of the council—

"It is advisable that said streets and parts of streets should be vacated and closed without further delay, and that in the opinion of this council the public interests demand that said streets and parts of streets should be immediately vacated and closed as a necessary public improvement."

In consideration of which the previous resolution and proceedings were declared ratified and confirmed, and it was again resolved and declared that the streets and parts of streets in question were vacated "as a necessary public improvement." These proceedings follow strictly all statutory requirements unless, as contended by complainants, a petition is essential to jurisdiction to act.

The scheme of complainants' bill is to restrain defendant by injunction from unlawfully obstructing a highway, a wrong in its nature an invasion of public rights, a nuisance, or purpresture, to be as a rule redressed only by appropriate judicial action at the instance of public authorities, but which may be in exceptional instances abated at the suit of private parties who have suffered or been threatened with some special, peculiar, and particular injury growing out of such wrong, different not merely in degree but in kind from that resulting to the general public.

As champions of the public rights of the citizens of Charlevoix, complainants have no standing in this suit. 2 Elliott on Roads and Streets (3d Ed.), § 850a; 3 McQuillian on Municipal Corporations (3d Ed.),

§ 1382.   Complainants have no interest in the fee of Central avenue, or any land abutting thereon, or in Lindsay Park addition.   Neither they nor the city can assert any proprietary interest in the land.   The defendant or its grantors, as owners, only gave the city an easement for travel over and along it.   The numerous cases cited relative to the rights of abutting owners have little bearing here.   Complainants' most urgent claims of special injury are special in degree rather than in kind.

A thoroughfare leading in the same direction through Lindsay Park, and for one-half the distance the same thoroughfare, connects State street and Chicago avenue as before.   At its northerly end it intersects State street 150 feet farther west and nearer the business center of the city than formerly.   To traverse it necessitates a jog of 100 feet, near the center of the addition, to the east or west, according to the direction traveled.   This inconvenience is common in kind to all who go that way, differing only in degree according to the extent use is made of the highway.   This is also true of the complaint that the new street is more difficult of travel by reason of drifting snow in the winter and bad condition of the way in wet weather, as compared with Central avenue. Complainants Marsa and Curtis also claim that closing Central avenue opposite their properties on State street depreciates their values.   Marsa testifies that he paid $600 for his property three years before, considers it worth $1,000, and "I would not give one-half the price that I would if Central avenue was open." Curtis says:

"If I wanted to sell the place today I would not take less than $1,200 for it.   If Central avenue were closed, I suppose I could not get over $1,000 for it."

This is the most definite, and practically all, testimony as to depreciation in values.   Such damage,

when clearly established, might with some force be urged as differing in kind from that to the general public.

Complainants' bill is primarily based on the existence of a highway, and the allegation is supported in the first instance by proof of dedication of an easement for the street by platting the addition in 1894 and subsequent public work and travel thereon. Against this the existence of a highway is denied by defendant, and in support of its denial it offers proof of proceedings taken by the common council vacating the street. Though its validity is denied, it is conceded such action was taken, and that various resolutions to that end were passed. While the objection is urged that certain of the proceedings relative to the first resolution were not recorded in proper place and time, and that the statute was not complied with in other respects, such allied irregularities do not apply to the resolution of October 31, 1911. The statute under which the council acted (section 2782, 1 Comp. Laws, 3 How. Stat. [2d Ed.] § 6001), provides:

"Every resolution or ordinance discontinuing or vacating any street, alley or public ground shall also be recorded in said book of street records and the record shall be *prima facie* evidence of all matters therein set forth."

Defendant's proof *prima facie* negatives the existence of a highway. To defeat this proof, complainants must necessarily attack the proceedings of the common council.

It is urged that they are void upon their face because no petition was presented as a basis for them. If the council acted without jurisdiction, that question can be raised successfully at any time, and, as counsel claims, the proceedings are a nullity. The action was taken at the instance of the city attorney, who laid before the council letters of request and a map indicating what was proposed. But, assuming this did

not constitute a legal petition, we cannot agree with the contention that a petition is required.   Counsel for complainants cite 3 Abbott on Municipal Corporations, p. 2202.   It is there said:

"That orderly manner in which a highway must be vacated involves a petition, ordinance, or other municipal action as may be required, notice to interested parties, a hearing at which remonstrances may be urged and considered," etc.

In harmony with the author's suggestion, the test is:   What do our statutes require?   We find no requirement that a petition must be filed in the statute under which the council acted.   Sections 2780, 2781, 1 Comp. Laws (3 How. Stat. [2d Ed.] §§ 5999-6001), define their powers and course of procedure.   Plenary power and jurisdiction are given the council by the statute.   It follows that they may act on their own motion.   *Pearsall* v. *Board of Supervisors,* 71 Mich. 438 (39 N. W. 578).   The council had jurisdiction to act, and the proceedings ending in the resolution of October 31, 1911, if not the former ones, are not void for want of jurisdiction.

The power of the council was discretionary.   The fact that the vacated street returns to and becomes the property of the abutting owner, or that the action was at his request, standing alone, does not show that the action was solely for a private purpose, nor does it necessarily imply illegality and fraud.   *Kean* v. *City of Elizabeth,* 55 N. J. Law, 337 (26 Atl. 939). The presumption is· that public officers observe their official obligations and act from honest motives.   It would be an extreme case where a court would hold to the contrary and declare false, solemn utterances in the official records of a city council stating that the action taken is "advisable," "a necessary public improvement," which "the public interests demand," where the attack upon their integrity is collateral in its nature, in a proceeding seeking to nullify such

records, because they are falsehoods, and to which the council is not made a party nor given an opportunity to defend.

Complainants have appealed to a court of equity. The charge of fraud and conspiracy set up in their special replication and urged in their brief is not an afterthought and would in all fairness require that the officials included in the charge and whose action, legislative in its character, is thus attacked should be made parties. Before this bill was filed, complainants had full notice and knowledge of the action of the council vacating the street and that defendant's claim of ownership based upon such action would be the issue in the case. In Joyce on Nuisances, § 416, it is said:

"The jurisdiction of courts of equity over the subject-matter is, however, not an original jurisdiction. This power was formerly exercised very sparingly, only in extreme cases, at least not until after the right and question of nuisance had been first settled at law. While in modern times the strictness of this rule has been somewhat relaxed, there is still a substantial agreement among the authorities that to entitle a party to equitable relief before resorting to a court of equity his case must be free and clear from all substantial doubt as to his right to relief."

For the reasons stated, the decree of the trial court is reversed, and a decree will be entered here dismissing complainants' bill, with costs of this court only in favor of defendant.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.