PUYPER, et al. *v.* PURE OIL Co., et al.

Oct. 13, 1952

No. 38474          3 Adv. S. 31          60 So. 2d 569

122

*J. E. Stockstill,* for appellants.

*Morse & Morse,* also for appellants.

*Hannah, Simrall & Aultman,* for appellees.

128

KYLE, J.

E. J. Puyper and others, complainants, filed their bill of complaint in the chancery court of Pearl River County against the Pure Oil Company, the City of Picayune and the New Orleans and Northeastern Railroad Company, as defendants, seeking to enjoin the Pure Oil Company and the City of Picayune from closing or obstructing a short section of a street in the City of Picayune, which constituted a part of Old U. S. Highway No. 11, and to recover damages alleged to have been sustained by the complainants as a result of the wrongful closing of the street by the governing authorities of the municipality

and the wrongful obstruction of same by the Pure Oil Company.

The complainants alleged in their bill of complaint that the mayor and board of aldermen of the City of Picayune had, on October 10, 1949, without notice to the complainants, adopted an ordinance closing that part of the said Old U. S. Highway No. 11 lying between Fourth Street and Fifth Street, and that the Pure Oil Company, which owned the land abutting on the east side of the closed section of said highway, had taken possession of the old right-of-way of said highway lying between Fourth Street and Fifth Street and had appropriated the same to its own use; that the complainants were property owners owning property along the east side of said old highway and had received no notice of the proposed action of the mayor and board of aldermen prior to the adoption of said ordinance; and that the complainants had not been made parties to any proceeding for the closing of said street. The complainants further alleged that their properties abutting on the old highway had been greatly damaged and the market value thereof greatly impaired as a result of the closing of said street, and that no compensation had been paid to them for the damage thus inflicted upon them. The complainants asked for a mandatory injunction requiring the city and the Pure Oil Company to restore the street to the condition it was in prior to the adoption of the closing ordinance and for a decree awarding damages to each of them for the injuries sustained by them as a result of the wrongful closing of said street.

The New Orleans and Northeastern Railroad Company filed a separate answer asserting its ownership of a 200-foot right-of-way along the west side of the old highway and denied that the complainants were entitled to any relief against it. After the filing of the answer an agreed order was entered as to the railroad company in which the company's ownership of the 200-foot right-

of-way was recognized, and the railroad company took no further part in the trial.

The Pure Oil Company and the City of Picayune filed separate answers and in their answers admitted that the section of the old highway lying between Fourth Street and Fifth Street had been closed by an ordinance adopted by the mayor and board of aldermen on October 10, 1949. The defendants alleged that the street had been closed by the mayor and board of aldermen as a safety measure to reduce traffic hazards near the intersection of Fourth Street and the new U. S. Highway No. 11 and at the railroad crossing immediately west of said intersection. The defendants in their answers denied that the complainants were abutting property owners owning property abutting on the section of the old highway which had been closed, or that the complainants had been damaged in any way by the closing of the highway. The defendants averred in their answers that there were several cross streets leading from the old highway, on which the complainants' properties were located, into the new highway which provided easy access from the old highway to the business district of the City of Picayune; and the defendants denied that the complainants were entitled to any compensation for damages to their properties as a result of the closing of the highway.

The facts developed upon the hearing before the chancellor showed that Harvey Avenue was the main business street of the City of Picayune and extended northwardly to the point of intersection with Fourth Street. The old U. S. Highway No. 11, which was established as a state highway many years before the new highway was constructed, ran northwardly along Harvey Avenue to a point about 100 feet south of the point of intersection of Harvey Avenue with Fourth Street. The old highway then turned northwestwardly for a short distance and crossed Fourth Street at a point immediately east of the railroad crossing, and continued thence northwardly along the east side of the railroad right-of-way

toward the northern boundary of the city. That part of the new U. S. Highway No. 11 which passed through the City of Picayune was completed in 1949. The new highway followed the route of the old highway along Harvey Avenue to the point where the old highway turned northwestwardly toward the railroad crossing. The new highway then continued along Harvey Avenue to the point of intersection with Fourth Street and ran thence northwardly along a new route laid out by the State Highway Department to the north boundary line of the city. After the completion of the new highway the old right-of-way of U. S. Highway No. 11, extending northwardly along the east side of the railroad right-of-way, ceased to be used as a part of U. S. Highway No. 11 and reverted to its status as a mere street of the City of Picayune. After the new highway had been relocated north of Fourth Street there was left between the old highway and the new highway immediately north of Fourth Street a small U-shaped parcel of land which was owned by the Pure Oil Company. The distance along the north side of Fourth Street between the old highway and the new highway was 47.5 feet; the distance between the two highways on Fifth Street, one block farther north, was 76 feet. The distance along the old highway from the north boundary line of Fourth Street to the south boundary line of Fifth Street was 353 feet. It was this link of the old highway that was vacated by the ordinance adopted on October 10, 1949.

The testimony of the complainants showed that all of their properties abutted on that part of the old highway lying north of Fifth Street. Only one of the complainants owned property in the first block north of Fifth Street. The other complainants owned property lying two, three or four blocks north of Fifth Street. The complainants testified that the market value of their properties had been diminished as a result of the closing of the street above the Fourth Street intersection. Each of them testified as to the inconvenience to which they were

subjected by being forced to turn into the new highway at the Fifth Street intersection and not being able to drive southwardly to the Fourth Street intersection, as they had been accustomed to do prior to the closing of the old highway south of Fifth Street.

The testimony offered on behalf of the defendants showed that the old highway running northwardly along the east side of the railroad right-of-way was a black top highway; that there were three streets paved with asphalt surfacing running eastwardly from the old highway into the new highway north of Fourth Street; that the complainants had ready access to their properties over any of these streets; and that complainants' properties had not been damaged on account of the closing of the lower end of the old highway below Fifth Street. Members of the board of aldermen testified that the closing of the lower end of the old highway was necessary to eliminate the danger of traffic accidents at the intersection of Fourth Street and the new highway and at the railroad crossing lying immediately west of the intersection. The record shows that immediately after the closing of the old highway north of Fourth Street the Pure Oil Company conveyed to the city a small strip of land off of the north side of Fourth Street for the purpose of enabling the city to widen the street between the railroad crossing and the new highway, and that the street had been widened and an "S" curve eliminated near the new highway intersection.

The chancellor after hearing the testimony stated in writing his findings of fact and his conclusions of law. The chancellor found that the ordinance closing the street had been legally adopted; that the complainants were not abutting property owners entitling them to compensation for the closing of the street; that the complainants had no special interest in the use of the vacated street for access purposes to their property, because their property did not abut on that portion of the street which was closed, and that they had sufficient and adequate access

to and from their property; and the chancellor found that the complainants had sustained no special damage by the closing of the street not shared in by the general public. The chancellor also found that the vacation of that part of the street complained of was in promotion of the general public good, and that the complainants were not entitled to the relief prayed for; and the chancellor entered a final decree dismissing the bill of complaint. From that decree the complainants prosecute this appeal.

The appellants' attorneys in their brief contend that the ordinance closing the section of the old highway between Fourth Street and Fifth Street is void for the reasons that, (1) the ordinance was passed without notice to the appellants, thus depriving them of their property without due process of law, and (2) the ordinance violates Section 17 of the Constitution of the State of Mississippi, which requires that the taking of private property be judicially determined to be for the public use, and (3) the ordinance in effect represents a donation of public property to a private corporation in violation of Section 95 of the Constitution of the State of Mississippi.

None of these contentions, in our opinion, can be successfully maintained in view of the findings of the chancellor and the facts disclosed by the record.

Section 3419, Code of 1942, vests in a municipal corporation full power and authority to close or vacate. any street or alley, or any portion thereof, subject only to the requirement that due compensation be first made to the abutting land owners for all damages sustained thereby.

(Hn 1) Where full power is granted to the authorities of a municipality to vacate streets, they may act upon their own motion, and a petition of property owners as a basis for the proceeding is not necessary in the absence of a statute requiring it. 44 C. J., p. 902, Municipal Corporations, par. 3641; Curtiss, et al. v. Charlevoix Golf Ass'n., 178 Mich. 50, 144 N. W. 818. In those jurisdictions where the statutes require that notice of the

intention of the governing authorities of the municipality to vacate a street be given to interested parties, the courts have held that only abutting property owners or persons having a legal right to compensation are entitled to notice. 44 C. J., p. 902. And "the general rule is that only those who sustain some special or peculiar injury, differing in kind and not merely in degree from that sustained by the general public are entitled to complain of a vacation." 25 Am. Jur., p. 420, Highways, par. 123.

The ordinance in this case recited **(Hn 2)** that the owner of the land adjacent to that part of the street which was ordered closed had agreed that the same might be closed and had waived any claim for damages that might be sustained as a result of the closing of the street; and the ordinance further recited that no other person would be damaged by the closing of the street. The chancellor found that the complainants were not abutting property owners owning property abutting on the section of the street which was closed; and the chancellor found that the complainants had sufficient and adequate access to and from their properties after the closing of the street, and that the complainants had sustained no special damages differing in kind, and not merely in degree, from those sustained by the public generally.

Under the facts thus developed it is clear that the complainants failed to show any violation of their property rights by the closing of the street, or any injury for which they were entitled to be compensated under Section 17 of the State Constitution.

**(Hn 3)** The general rule is that one whose property does not abut on the closed section of a street has no right to compensation for the closing or vacation of the street, if he still has reasonable access to the general system of streets. The circumstances in some cases may be such as to give a right to damages to a property owner, even though his property does not abut on the closed section. But to warrant recovery in any such case the property owner must show that the situation is such that he has

sustained special damages differing in kind, and not merely in degree, from those sustained by the public generally. 18 Am. Jur., p. 856, Eminent Domain, par. 224.

In the case of Tomaszewski, et al. v. Palmer Bee Company, et al., 223 Mich. 565, 194 N. W. 571, the Court held that mere inconvenience to owners of property abutting on a street but not on a closed section, in having to go around instead of through the adjacent block, when proceeding in that direction, does not constitute a taking of property. In that case the Court said: "It is a well-settled rule that a lot owner's right to object to the vacation of a part of a street depends upon whether his lot abuts upon or comes in actual contact with the vacated portion, or access to his lot is entirely or materially cut off by reason of the vacation. That he may be inconvenienced or that he may have to go a more roundabout way to reach certain points does not bring to him any injury different in kind from the general public, but only in degree. If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of being less direct to other points in the city, and made so by the vacation of the street in another block, such consequence is damnum absque injuria. Buhl v. Union Depot Co., 98 Mich. 596, 57 N. W. 829, 23 L. R. A. 392. See, also, Baudistel v. Michigan Central Railroad Company, 113 Mich. 687, 71 N. W. 1114; Realty & Investment Co. v. Deere & Co., 208 Mo. 66, 106 S. W. 496, 14 L. R. A. (N. S.) 822; Kinnear Mfg. Co. v. Beatty, 65 Ohio St. 264, 62 N. E. 341, 87 Am. St. Rep. 600; McQuillin Mun. Corp., Vol. 3, par. 1410; Elliott, Roads & Streets (3rd Ed.), par. 1181."

In the case of Phelps, et al. v. Stott Realty Company, et al., 233 Mich. 486, 207 N. W. 2, the Court, citing with approval the principles laid down in the Tomaszewski case, supra, held that the right to object to the vacation of a portion of an alley depends upon whether the objector's property abuts on that part of the alley which is vacated or closed. In the case of East St. Louis v.

O'Flynn, 119 Ill. 200, 10 N. E. 395, 59 Am. Rep. 795, the Court held that under a statute providing for the payment of compensation when property is "damaged" by the vacation or closing of streets, one whose property was located in another block from the streets and alleys vacated could not recover damages, since his injury was of the same kind as that sustained by other persons in the municipality, although it might be greater in degree.

In the case of Glasgow v. St. Louis, 107 Mo. 198, 17 S. W. 743, it was held that there was no right to compensation for the vacation of a part of a street, under a constitutional provision that private property shall not be "taken or damaged" for public use without just compensation, where the part of the street vacated was in the block adjacent to the property abutting on another part of the same street which it was claimed had sustained damages. The Court said that there is no doubt that a property owner has an easement in a street upon which his property abuts which is special to him and should be protected; but that in this case the plaintiffs owned no property fronting or abutting on the part of the street which was vacated; that their property was surrounded by streets not touched or affected by the vacating ordinance, although they would be obliged to go a little farther to reach the next street in that direction, which, however, was an inconvenience different in degree only from that suffered by all other persons.

The principles laid down in the authorities mentioned above have been approved and applied by our own Court in the cases of Poythress, et al. v. Mobile & Ohio R. Co., et al., 92 Miss. 638, 46 So. 139; Town of Clinton, et al. v. Turner, 95 Miss. 594, 52 So. 261; City of Jackson, et al. v. Welch, et al., 136 Miss. 223, 101 So. 361; and Town of Wesson v. Swinnery, 144 Miss. 867, 110 So. 669.

In the Poythress case supra, the Court held that Poythress was not an abutting landowner upon the street which was closed, entitling him to have compensation first made to him before the closing of the street, within

the meaning of Code of 1906, paragraph 3336, as he owned no property abutting the closed portion, citing Cram v. City of Laconia, 71 N. H. 41, 51 A. 635, 57 L. R. A. 282. In the Poythress case, the Court said: "We are unwilling to hold that a municipality cannot close a street, when in its judgment it is for the public good. In such case the individual right of the citizen must yield. The ordinance providing for the closing of this street was passed, as the ordinance declares, because the municipal authorities believed that the safety of the public demanded it. Under these conditions it was in the power of the municipality to order the street closed. If the complainants have suffered any special damage by the closing of this street, not shared in by all the public, they have recourse against the municipality; but, in the meantime, it is within the power of the municipality to close the street, if in the judgment of the municipality it is dangerous to pedestrians and others, and this can be done without interference to Poythress. To deny the municipality this right would be to deny to it the power to exercise one of the most important protective duties that it owes to the public."

In the case of Town of Wesson v. Swinnery, supra, the Court in its opinion said: "It is the convenient ingress and egress to and from his property which the municipality cannot interfere with by the closing of a street on which the landowner's property abuts without making due compensation therefor. The statute (Section 3336, Code of 1906), Section 5833, Hemingway's Code) expressly confines the right to compensation for the closing of streets and alleys in a municipality to 'abutting landowners upon such streets or alleys.' A landowner complaining at the closing of a street or alley must suffer especial damage over and above that of the landowners generally of the municipality. The statute undertakes to define those landowners who may suffer such special damages. It is only those who are 'abutting landowners.' We are of the opinion that the statute in its language

and purpose carries out the inhibition of Section 17 of the Constitution, which provides that private property shall not be taken or damaged for public use, except upon due compensation being made to the owner. To construe the Constitution and statute as extending to others than abutting landowners would go too largely into the field of speculation.''

The appellants' attorneys cite in support of their contentions the cases of the City of Laurel, et al. v. Rowell, et al., 84 Miss. 435, 36 So. 543; Town of Clinton, et al. v. Mattie Turner, supra; and Morris v. Covington County, 118 Miss. 875, 80 So. 337. But in each of those cases the Court had under consideration the question as to the rights of property owners owning property which actually abutted upon that part of the street or highway which had been closed, and the facts presented in each of those cases were entirely different from the facts presented in the case that we now have before us.

The chancellor was amply justified in finding that the complainants had sustained no special damages as a result of the closing of that part of the old highway lying south of the Fifth Street intersection not shared by the general public, and that the complainants were not entitled to complain of the vacation of the highway.

(Hn 4) The appellants' attorneys contend, however, in their briefs that the closing ordinance is void because it violates the mandate of the State Constitution requiring that the taking of private property be judicially determined to be for the public use. The section of the Constitution to which reference is made is Section 17, which provides that ''whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question and as such determined without regard to legislative assertion that the use is public.'' In view of the chancellor's finding that the complainants sustained no injury as a result of the adoption of the clos-

ing ordinance for which they are entitled to be compensated, the question thus presented might well be treated by us as entirely moot. But, inasmuch as the question whether the closing of the street was for the public good was presented to the chancellor for decision under the pleadings and proof, and the chancellor found that the closing of the street was for the public good, it may be said that in our opinion the chancellor's finding on that issue is amply supported by the testimony, and there is no merit in the contention now made that the ordinance is void for the reason that it failed to provide for a judicial determination of the question thus presented and decided.

(Hn 5) The appellants' attorneys also contend that the ordinance closing the street is void because it contained no formal declaration that the public interest or convenience required that the street be closed. The question of the need for a formal recital in the ordinance itself of the necessity for its enactment is discussed in McQuillin on Municipal Corporations, Second Edition, Rev. Vol. 2, p. 754, and the general rule is there stated as follows: ''The general rule is that the ordinance need not recite the reasons for its enactment. Even where charters or statutes provide that in certain ordinances the necessity of their passage be declared, the judicial view is that failure in this respect does not render the ordinance void, since its passage authorizing the act is equivalent to declaring the necessity. The law, when enacted, furnishes its own reason.'' The failure to include in the ordinance adopted by the mayor and board of aldermen on October 10, 1949, a formal declaration or recital that the public interest or convenience required that the street be closed did not render the ordinance invalid. The adoption of the ordinance was itself a determination by the mayor and board of aldermen that the public interest and welfare required that the street be closed. 44 C. J., p. 903, Municipal Corporations, par. 3646; City of Crowley v. Ellsworth, 114 La. 308, 38 So. 199, 69 L. R. A.

276, 108 Am. St. Rep. 353; People v. City of Los Angeles, 62 Cal. A. 781, 218 P. 63; Manufacturers' Foundry Co. v. City of Holland, 253 Mich. 60, 234 N. W. 129; Kinney, et al. v. Reno Community High School, et al., 130 Kan. 610, 287 P. 258.

(Hn 6) There is no merit in the appellants' contention that the closing of the street constituted in effect a donation of a portion of the right-of-way of the old highway to the Pure Oil Company, a private corporation, in violation of the provisions of Section 95 of the State Constitution. It is true that when the section of the old highway between Fourth Street and Fifth Street was closed the abandoned right-of-way reverted by operation of law to the abutting property owner. But the adoption of the ordinance closing the street did not constitute a donation by the mayor and board of aldermen to the abutting property owner of property owned by the municipality. The mere fact that the Pure Oil Company may have been benefited on account of the reversion to it of a portion of the abandoned right-of-way did not deprive the governing authorities of the municipality of the right to close the portion of the street which was no longer needed, for the purpose of reducing the dangers of traffic accidents on Fourth Street between the new highway and the railroad crossing. The only donation shown in the record is the donation by the Pure Oil Company to the city of a small parcel of land off of the south side of the Pure Oil Company's lot which was conveyed by the Pure Oil Company to the city after the vacation ordinance had been adopted, for the purpose of enabling the city to improve and widen Fourth Street between the new highway and the railroad crossing.

We find no error in the record, and the decree of the lower court is affirmed.

Affirmed.

*Roberds, P.J.,* and *Alexander, Holmes* and *Ethridge, JJ.,* concur.