Mississippi State Highway Commission *v.* Fleming, et al.

No. 42779          November 25, 1963          157 So. 2d 792

*Boyd, Holifield & Harper, Welch, Gibbes & Graves,* Laurel, for appellant.

*George D. Maxey, Grover C. Doggette,* Laurel, for appellees.

Kyle, J.

The appellees, R. H. Fleming and wife, Otis Beech and wife, Edward L. Walters and wife, Tatum B. Dennis and wife, Clarence W. Boggs and wife, John F. Walters and wife, and Homer J. Stennett and wife, as the owners of property which abutted on Fourteenth Avenue in the City of Laurel, filed separate suits in the Circuit Court of the Second Judicial District of Jones County against Mississippi State Highway Commission for property damages alleged to have been sustained by them as a result of the closing of a part of Fourteenth Avenue, which was being taken by the Commission for right of way uses in the construction of Interstate Highway No. 59, a newly constructed controlled access highway.

The record shows that each of the appellees owned residences in the "400 block" of South Fourteenth Ave-

nue at the time of the closing of the avenue at the interstate highway intersection. The appellees, R. H. Fleming and wife, Otis Beech and wife, and John F. Walters and wife, owned homes located on the east side of Fourteenth Avenue; and the appellees, Homer J. Stennett and wife, Tatum B. Dennis and wife, Clarence W. Boggs and wife, and Edward L. Walters and wife, owned homes located on the west side of Fourteenth Avenue. The closed portion of Fourteenth Avenue corners with the northwest corner of the Fleming residence lot, which fronts westwardly on Fourteenth Avenue and is bounded on the north by the new highway. The effect of the closing of Fourteenth Avenue at the point of intersection with the new interstate Highway No. 59 was to make the south part of Fourteenth Avenue a dead-end street. Before the closing of the avenue at the new highway intersection the appellees had direct access to the street system of the City of Laurel for travel either north or south from their property. After the closing they had direct access only to the south.

The record shows that the appellant began grubbing the right of way for the new highway at the intersection with Fourteenth Avenue in June 1957. The avenue, however, was kept open for travel with a flagman present to signal traffic, until September 1958, at which time the south part of the avenue was completely severed from the north part.

Although there was no east-west street intersecting South Fourteenth Avenue between the plaintiff's residence properties and the new highway intersection, and the plaintiffs' access to their properties from the general system of streets in a northerly direction was cut off by the closing of Fourteenth Avenue at the new highway intersection, Queen Street, running east and west approximately 476 feet south of the new highway intersection, was opened from South Fourteenth Avenue to South Thirteenth Avenue, one block east of South Four-

teenth Avenue, at approximately the same time that South Fourteenth Avenue was closed; and the residents of the "400 Block" of South Fourteenth Avenue were thereby provided access to the general system of streets by a somewhat more circuitous route toward the south. They could go south on Fourteenth Avenue a few hundred feet and thence east on Queen Street one block to South Thirteenth Avenue, from whence they could travel in any direction they desired. The only depreciation of the plaintiff's right of access to the properties resulting from the closing of South Fourteenth Avenue at the new highway intersection was the deprivation of their right to travel north on South Fourteenth Avenue beyond the new highway intersection as they had been accustomed to do theretofore.

At the time of the closing of Fourteenth Avenue no legal proceedings had been instituted by the State Highway Commission for the purpose of determining the amount of compensation and damages, if any, which should be paid to, the plaintiffs as damages for the closing of Fourteenth Avenue at the new highway intersection, and no offer was thereafter made by the State Highway Commission to pay the plaintiffs any compensation that might be due them for the closing of the avenue.

The plaintiffs alleged in their declarations that on or about September 1, 1958, the State Highway Commission caused South Fourteenth Avenue to be closed to vehicular traffic; that prior to the closure, South Fourteenth Avenue was the usual and customary means of access to the property owned by the plaintiffs, and the plaintiffs owned a vested interest in the avenue; that, as a direct result of the closing of South Fourteenth Avenue, the plaintiffs had suffered damages to their properties for which compensation had not been paid; and the plaintiffs sued and demanded judgments for the several amounts stated in their declarations.

The defendant in its answer in each case admitted that Fourteenth Avenue had been closed at the north end of the "400 Block" in the process of constructing interstate Highway No. 59; but the defendant denied that the closing was within the block where the plaintiffs' homes were located. The defendant denied that the closed portion of South Fourteenth Avenue provided the usual or customary means of access to the plaintiffs' properties. The defendant denied that the plaintiffs owned vested interests in that part of the avenue which was closed; and the defendant denied that the plaintiffs had been damaged as a result of the closure of a part of South Fourteenth Avenue.

The seven cases were consolidated for trial before the circuit judge by agreement of the parties.

Each of the plaintiffs testified as to the value of his property both before and after the closing of the street at the point of intersection with the new highway, and the amount of damages which he felt he had sustained. No other evidence was offered on behalf of the plaintiffs.

Clarence A. Boone, a real estate broker of the City of Laurel and a qualified expert on land values, was called to testify as a witness by the State Highway Commission. Boone testified that he had inspected the dwelling houses and lots of the several property owners and had made a study of sales of comparable houses and lots in the general area for the purpose of establishing the value of each of the several parcels of land before the closing of Fourteenth Avenue at the interstate highway intersection, and after the closing of the avenue at the intersection. Boone stated that in his opinion the fair market values of the properties owned by the several appellees were not affected by the closing of Fourteenth Avenue at the point of intersection with the right of way of the new highway.

There was no evidence offered on behalf of any of the plaintiffs to show physical damage to any of the

property as a result of the closing of the avenue at the highway intersection.

At the conclusion of the hearing the court found that on the question of legal liability there was no difference in the Fleming case and the cases of the other plaintiffs, but on the question of damages there was a slight difference in the degree, due to the location of the properties. The court found that the property of each of the several plaintiffs after the closing of Fourteenth Avenue at the intersection of the highway, was in a cul-de-sac, that the blocking of the avenue at the highway intersection in effect split a long block and made Fourteenth Avenue from Queen Street on the south to the non access highway a dead-end street with no turn-around provision at the north end. The court found that the damage to the property owned by each of the plaintiffs was different in kind from the damages suffered by the general public as a result of the closing of the avenue at the point of intersection with the new highway.

The court therefore awarded damages to the plaintiffs in the several amounts stated as follows

R. H. Fleming, et ux_____$1652.00
Otis Beech, et ux_____$1405.00
Edward L. Walters, et ux_____$ 950.00
Tatum B. Dennis, et ux_____$1002.00
Clarence W. Boggs, et ux_____$ 850.00
John F. Walters, et ux_____$1175.00
Homer J. Stennett, et ux_____$ 950.00

A judgment was therefore entered ordering that the plaintiffs do have. and recover from the Mississippi Highway Commission that several amounts stated above.

From that judgment the State Highway Commission has prosecuted this appeal.

The appellant has assigned and argued three points as grounds for reversal of the judgment of the lower court:

(1) That the court erred in awarding the appellant Fleming judgment for $1652 for the reason that the same was excessive and not supported by the evidence;

(2) That none of the appellees other than the Flemings were entitled to recover damages in any amount and the lower court erred in awarding damages to each of them; and

(3) That the amount of damages awarded to each of the appellees other than the Flemings is so excessive as to shock the enlightened judicial conscience, and the judgment of the lower court should be reversed for that reason.

This is the second time that the Fleming case has been before us on appeal. See Miss. State Highway Commission v. Fleming (1962), 242 Miss. 402, 135 So. 2d 821. On the first appeal this Court held that the Flemings whose lot cornered with the closed portion of the street were "abutting owners" entitled to recover damages for the closing of a portion of the street; but such owners could not recover for any inconvenience or other damages unless they have sustained special damages differing in kind, and not merely in degree, from those sustained by the public generally. Puyper v. Pure Oil Company, et al. (1952), 215 Miss. 121, 60 So. 2d 569. The court, however, reversed the judgment rendered in favor of the Flemings on the first trial on the ground that the verdict was so excessive as to shock the enlightened conscience; and in its opinion the Court said:

"Appellees were entitled to something more than mere nominal damages, but the evidence is wholly lacking to sustain this verdict. Appellees have not cited but one authority in their brief, the case of Collins v. Mississippi State Highway Commission, et al., 233 Miss. 474, 102 So. 2d 678. That case does not deal with the question of the amount of damages in a case of this kind.

"* * * In the present case, no damages have been shown except depreciation in market value, and, as already indicated, evidence in that regard is very slight. We do not think the Court should say as a matter of law that there has not been some depreciation in the value of appellees' property, even though slight in relation to the total value."

Section 3374-127, Mississippi Code of 1942, Rec., provides as follows: "The governing authorities of municipalities shall have the power to close and vacate any street or alley, or any portion thereof. But no street or alley or any portion thereof shall be closed or vacated except upon due compensation being first made to the abutting landowners upon such street or alley for all damages sustained thereby."

In Puyper v. Pure Oil Company et al., (1952), 215 Miss. 121, 60 So. 2d 569, 573, this Court said: "The general rule is that one whose property does not abut on the closed section of a street has no right to compensation for the closing or vacation of the street, if he still has reasonable access to the general system of streets. The circumstances in some cases may be such as to give a right to damages to a property owner, even though his property does not abut on the closed section. But to warrant recovery in any such case the property owner must show that the situation is such that he has sustained special damages differing in kind, and not merely in degree, from those sustained by the public generally. 18 Am. Jur. p. 856, Eminent Domain, par 224."

In the case of Town of Wesson v. Swinney, 144 Miss. 867, 110 So. 669, the Court held that under Code 1906, Section 3336, (Hemingway's Code, Sec. 5833), enacted under authority of the State Constitution, Section 17, a landowner was not entitled to compensation for the closing of a street which did not abut on his land, although the result was that a large part of the traveling

public theretofore passing along the street in front of his lot on which he maintained a mercantile establishment was diverted therefrom.

The Court in its opinion in that case said: ''It is the convenient ingress and egress to and from his property which the municipality cannot interfere with by the closing of a street on which the landowner's property abuts without making due compensation therefor. The statute (Section 3336, Code of 1906 (Section 5833, Hemingway's Code) expressly confines the right to compensation for the closing of streets and alleys in a municipality to 'abutting landowners upon such streets or alleys.' A landowner complaining at the closing of a street or alley must suffer especial damage over and above that of the landowners generally of the municipality. The statute undertakes to define those landowners who may suffer such special damages. It is only those who are 'abutting landowners.' We are of the opinion that the statute in its language and purpose carries out the inhibition of Section 17 of the Constitution, which provides that private property shall not be takened or damaged for public use, except upon due compensation being made to the owner. To construe the Constitution and statute as extending to others than abutting landowners would go too largely into the field of speculation.''

In 18 Am. Jur., pp. 856, 857, Eminent Domain, Sec. 224, it is said: ''It may be stated as a general rule that one whose property does not abut on the closed section has no right to compensation for the closing or vacation of a street, if he still has reasonable access to the general system of streets. * * * On the other hand, the right to recover damages is not necessarily dependent on the question as to whether the property of the claimant abuts on the closed section. The circumstances may be such as to give a right to damages to a property owner, even though his property does not abut on the closed

section. This is true if the situation is such that he may be regarded as sustaining special damages differing in kind, and not merely in degree, from those sustained by the public generally. In any case there must be such special injury to warrant a recovery.

In discussing the nature of the proof required to justify a recovery of damages in a case of this kind, the textwriter in 18 Am. Jur., pp. 858, 859, Eminent Domain, Sec. 225, says: "What constitutes special or peculiar damage for which the private owner may maintain an action is not always easy to determine. No general rule has been laid down which can readily be applied to every case. It is not enough that the vacation results merely in some inconvenience to his access, or compels a more circuitous route of access, or a diversion of travel in front of the premises, and to a consequent diminution of value. To sustain the right of a claimant to compensation, it must appear that the loss results from the depreciation in value of his land because of the change in the street; and his loss must be direct and proximate, and so obvious and substantial as to admit of calculation. Thus, damages may not ordinarily be recovered for the vacation or closing of a street in another block from that in which the complainant's property is located, or, in other words, beyond the next cross street." See also Puyper v. Pure Oil Co., supra.

In the case of Hiatt v. City of Greensboro (1931), 201 N.C. 515, 160 S.E. 748, which is almost on all fours with the case that we have here, the Court, in affirming the judgment of the lower court, said: "In the instant case, plaintiffs, the owners of a lot abutting on South Spring Street, by the closing of said street have been deprived of their easement of access to their property over and along said street, with the result that the value of their property for residential and other purposes has depreciated. In 13 R.C.L. at page 71, it is said: 'It has been held that the vacation of a highway or street

is not an injury to the abutting owners within the provisions of the Constitution requiring compensation, and in the absence of legislative provisions for damages, none can be recovered. But the general rule is that persons especially injured by the vacation are entitled to recover such damages as they may sustain even in the absence of a statute providing therefor.' See note in 49 A.L.R. at page 351, where it is said: 'The weight of authority supports the proposition that if, by the vacation or closing of a street, access to property from the general system of streets in that direction, and the property is left fronting on a cul de sac, the owner may recover damages.' This statement is supported by numerous decisions of courts in many jurisdictions, which are cited by the author of the note.

"We are of opinion, after careful consideration, that the question of law presented by this appeal should be answered in the affirmative. The plaintiffs in the instant case have suffered special damages in the depreciation of the value of their property resulting from the deprivation of their right of access to their property from the northern section of the city and from the stopping of all travel by their property from the southern section of the city. They have been deprived of rights which differ in kind and degree from the rights of the public. They are entitled to recover the damages assessed by the jury, and the judgment is affirmed."

In Cooke v. City of Portland (1931), 136 Or. 233, 298 P. 900, the Court in its opinion said: "Unquestionably the weight of authority supports the proposition that, where a street upon which an owner's property abuts is closed at one end of the block, leaving the property in a cul de sac, the owner is entitled to damages. Sandstrom v. Oregon-Washington Ry. & Nav. Co., 75 Or. 159, 146 P. 803, and see numerous authorities in note 49 A.L.R. 351."

In the case of Collins v. Mississippi State Highway Commission, 233 Miss. 474, 102 So. 2d 678, the plaintiff sued to recover damages to his property from the city and the State Highway Commission for shutting off light, air and view from his residence, and the closing of an alley, which would deprive him of the use of the north end thereof, and would seriously damage his property by diminishing the value. The portion of the alley which was to be closed and made a part of the right of way of the new highway was not a part of the alley directly in front of the plaintiff's property, but it was in the same block; and as a result of the closing of the alley the plaintiffs who were owners of the abutting lots on the south side of the block were deprived of its use as a direct route from the property to the northern section of the city. For the plaintiff the alley became a blind alley toward the north, and the plaintiff was deprived of the use of the alley to that extent. The Court in that case held that the city had no power to close any portion of the alley which ran through the entire block except upon due compensation being first made to owners of the land abutting the alley for all damages sustained thereby; and that if the city closed the alley in violation of the statute and the Highway Commission entered upon the alley in violation of the statute and obstructed it by a dirt embankment, the city and the commission would be jointly liable.

The Fleming property, in the case that we have here, is fartherest north of the parcels of land involved in this appeal, and it adjoins the highway right of way. Fleming's lot, according to the testimony, was 100 feet wide and 191 feet deep. On it was a brick dwelling with a large living room, dining room, two bedrooms, kitchen and bath, and a back porch with a patio. The Flemings bought their property in 1952 for $6,750. Outwardly it was substantially the same in 1958 as in 1952, but the Flemings remodeled the interior during that period at

a cost of approximately $3,500. Fleming testified that he believed his property was worth $12,500 in 1958 before the closing of a part of South Fourteenth Avenue, and that the property value dropped to $8,000 after the closing, resulting in damages to him of $4,500. He gave no explanation or supporting reason for his belief that the resulting damage was $4,500. Although he valued his property before the closing of the street at $12,500, he knew of no property in the area which had been sold for so much prior to the closing. The defendant's witness, Clarence A. Boone, testified that in his opinion the fair market value of the Fleming property, before and after the closing of Fourteenth Avenue at the new highway intersection, was $10,000.

The lots owned by the plaintiffs were smaller lots, and the dwelling houses located on the lots varied in size, structural design and value.

In view of the authorities which we have cited above, we think there was no error in the action of the trial judge in awarding damages to the appellees under the facts disclosed by the record in this case. Although the properties of all of the plaintiffs do not abut on the closed section of Fourteenth Avenue the situation of the property of each of the plaintiffs was such that the property was left in a cul de sac as a result of the closing of Fourteenth Avenue at the new highway intersection. The damages sustained by the plaintiffs were damages of a special nature differing in kind, and not merely in degree, from those sustained by the public generally, and the plaintiffs were entitled to recover in this case as in the Collins' case, supra, and in the North Carolina case cited above. While there is but little evidence to establish the measure of damages which should be awarded, we are unable to say that the proof was insufficient to show a dimunition in market value of the properties as a result of the closing of the street at the new highway intersection. The lower court

was the trier of the facts, and we cannot say that the amounts of damages awarded were so excessive as to justify a reversal of the judgment for that reason.

The judgment of the lower court is therefore affirmed.

Affirmed.

*Lee, P. J., and Ethridge, Rodgers and Jones, JJ.,* concur.