HAMILTON, et al. *v.* MISSISSIPPI STATE HIGHWAY COMM.

March 15, 1954

No. 39158          57 Adv. S. 4          70 So. 2d 856

342

*Ethridge & Minniece,* Meridian, for appellants.

*J. P. Coleman,* Atty. Gen., Jackson; *Dunn & Singley,* Meridian, for appellee.

McGehee, C. J.

An interlocutory appeal was allowed by the trial court in the above styled cause from an order sustaining a general demurrer to the amended bill of com-

plaint filed by the appellants. The order granting the appeal provides that it is without supersedeas and is granted to settle all of the controlling principles involved in the cause.

The appellants, William M. Hamilton and others, jointly own certain property in the southern part of the City of Meridian which abuts on the west side of Hamilton Road, which runs generally in a northern and southern direction. This public thoroughfare is paved, and is one of the first of such thoroughfares in that section of the city to have concrete sidewalks. In other words, Hamilton Road has been in use for many years as a public street under the jurisdiction of the municipal authorities.

During the years 1948, 1949 and 1950 the appellee, Mississippi State Highway Commission, constructed a four-lane concrete highway known as the Tom Bailey Drive formed by U. S. Highways Nos. 11 and 80, and which runs east and west separating the property of the appellants so as to leave a good portion thereof on the north side of the Tom Bailey Drive and the remainder on the south side thereof, all abutting on Hamilton Road on the west side thereof and adjacent to the Tom Bailey Drive which divides the complainants' property into two areas.

The appellee constructed the Tom Bailey Drive so as to leave a median strip or neutral ground in the center thereof about four feet in width, and two paved travel lanes of the width of 24 feet each, one on the north side and the other on the south side of the said median strip or neutral ground. This neutral ground is unbroken for at least a distance of 1,580 feet and it crosses Hamilton Road at a point where there is 560 feet thereof left on the east side of the road and 1,020 feet on the west side thereof. The neutral ground was extended across Hamilton Road for the purpose of preventing the use of the said street for the passage of motor vehicles across the intersection of said street with the Tom

Bailey Drive, and so as to require motorists coming from the north on Hamilton Road onto the Tom Bailey Drive to turn to the right upon entering same and travel the distance of 1,020 feet, make a turn and then come back to Hamilton Road and proceed to the south, and so as to require motorists traveling north on Hamilton Road to turn to the right and travel a distance of 560 feet, turn around and go back to Hamilton Road and proceed northward.

The amended bill of complaint alleges that this neutral ground was extended across the intersection above mentioned without the consent or authorization of the municipal authorities; that while the construction of the said neutral ground across the intersection was intended to stop travel by motor vehicle over the same, there are still some motorists who drive on over the neutral ground in traveling either north or south on Hamilton Road; that complainants own a restaurant building located on their property where it abuts on Hamilton Road immediately north of its intersection with Tom Bailey Drive and a filling station on their property where it abuts with Hamilton Road immediately south of the Tom Bailey Drive, and that the access to this business property is impaired to such an extent as to damage the value thereof; and it is sought by the amended bill to enjoin the appellee from further maintaining the neutral ground in its unbroken state where it crosses the intersection of Hamilton Road and the Tom Bailey Drive and that the complainants be awarded damages on account of the impairment of their right of access to their properties abutting on the west side of Hamilton Road, both on the north and on the south side of Tom Bailey Drive.

There is exhibited to the bill of complaint a lease agreement whereby the occupant of the restaurant building had agreed to pay the sum of $25 per month more as rental on the building in the event the complainants are successful in having this median strip removed to

the extent that it interferes with access to the restaurant building by motorists who would pass over the intersection. This exhibit was executed more than a year after the construction of the neutral ground, but the same is set forth as a part of the pleadings as a circumstance to show that the complainants are actually suffering substantial damage on account of the obstruction of Hamilton Road, since this restaurant building is located on property abutting on the northwest corner of the intersection.

There is also filed as an exhibit to the bill of complaint a drawing or map to illustrate the factual situation in regard to the location of the complainants' property with reference to the Hamilton Road and the Tom Bailey Drive as well as the location of the median strip or neutral ground where it impaired travel across the intersection of this street and the highway, and to show the location of the drive-in restaurant in the corner abutting the Hamilton Road and the Tom Bailey Drive on the north side of the Drive and the location of the filling station in the corner abutting the said thoroughfares on the south side of the said Drive.

The amended bill of complaint further alleges that all of the property of the complainants at the location in question "is extremely valuable as commercial property"; and that the complainants will continue to suffer damages to their property if the said median strip or neutral ground is not removed, and that the damages "are special damages to your complainants and are different in kind from the damages suffered by the public generally," * * *.

The City of Meridian was made a party to the suit and filed an answer wherein it was admitted that the appellee Mississippi State Highway Commission had constructed the median strip or neutral ground in the center of the Tom Bailey Drive and across the intersection of the said Drive with Hamilton Road, without the consent or authorization of the City of Meridian.

The answer also contained a cross bill wherein the City sought affirmative relief against the appellee. However, the appellee filed no answer to the cross bill but interposed its general demurrer to the amended bill of complaint. This demurrer having been sustained and the interlocutory appeal granted, the sole question here on this appeal is whether or not the complainants are entitled to relief against the appellee in the event it should be able upon a trial to establish the facts alleged in its amended bill of complaint.

The appellee contends first that the appellants are not abutting property owners within the meaning of Section 3374-127, 1952 Supplement Miss. Code 1942, which reads as follows:

"The governing authorities of municipalities shall have the power to close and vacate any street or alley, or any portion thereof. But no street or alley or any portion thereof shall be closed or vacated except upon due compensation being first made to the abutting landowners upon such street or alley for all damages sustained thereby."

And second, appellee contends that it was authorized by Section 8038, Code of 1942, defining the general powers of the State Highway Commission relating to the construction or maintenance of the state highways, to construct and maintain the median strip or neutral ground in the center of the Tom Bailey Drive and as an unbroken strip across the said intersection.

Answering these contentions in reverse order it is sufficient to say that Section 8038, Code of 1942, did not modify the municipality's jurisdiction over its streets, particularly in view of the provision contained in sub-section (d) thereof to the effect that "no rule, regulation * * * shall be made (by the Highway Commission) that conflicts with any statute now in force or which may hereafter be enacted, or with any ordinance of incorporated cities or towns." Ellisville v. State Highway Commission, 186 Miss. 473, 191 So. 274.

In other words, it is clear that the action of the Mississippi State Highway Commission in constructing this neutral ground across a long established public thoroughfare of the City of Meridian and without the consent of the municipal authorities, was beyond its statutory authority and power so to do. ▮▮ Nor could the city itself have validly consented to the impairment of the free and reasonable use of the street in such manner "except upon due compensation being first made to the abutting landowners upon such street * * * for all damages sustained thereby."

Therefore, the remaining question presented by the briefs of counsel in the case is whether or not the complainants are abutting landowners upon Hamilton Road within the meaning of Section 3374-127, supra; and if so whether or not they have sustained any special damages to their property, different in kind from that suffered by the general public, and not merely in degree.

The appellee relies strongly upon the case of Puyper, et al. v. Pure Oil Co., et al., 215 Miss. 121, 60 So. 2d 569, in support of its contention that the appellants herein are not abutting landowners on that portion of Hamilton Road that has been vacated, or over which travel is alleged to have been greatly impaired, by the construction of the median strip or neutral ground in the center of the Tom Bailey Drive where it crosses the said Hamilton Road. But in the Puyper case the southern portion of a certain link of old U. S. Highway No. 11, running north and south, formerly a part of Main Street through the City of Picayune, between Fourth and Fifth Streets running east and west, was vacated. The said Fifth Street was north of Fourth Street, and the property of the complainants bordered on Old Highway 11 north of Fifth Street, and therefore did not abut that portion of the street which has been vacated. Such is not the situation in the case at bar.

Moreover, in the Puyper case the chancellor not only found that the complainants were not abutting land-

owners "on the section of the street which was closed," but further found as a fact from the evidence upon the trial that the complainants had sufficient and adequate access to and from their properties after the closing of the street, and that the complainants had sustained no special damages differing in kind, and not merely in degree, from those sustained by the public generally. ▆▆▆ The court however recognized in its opinion that: "The circumstances in some cases may be such as to give a right to damages to a property owner, even though his property does not abut on the closed section." To do so, however, the opinion recognizes the necessity of the property owner showing that he has sustained special damages, differing in kind and not merely in degree, from those sustained by the public generally, citing 18 Am. Jur., Eminent Domain, Par. 224, p. 856.

In the Puyper case the Court also cited with approval the case of Tomaszewski, et al. v. Palmer Bee Co., 223 Mich. 565, 194 N. W. 571, wherein it was held that "mere inconvenience to owners of property abutting on a street but not on a closed section, in having to go around instead of through the adjacent block, when proceeding in that direction, does not constitute a *taking* of property." (Italics ours). In the instant case, however, the complainants based their suit on Section 17 of the Mississippi Constitution of 1890, which prohibits the taking or damaging of private property for public use except on due compensation being made to the owner; and on Section 3374-127, supra, which authorizes a municipality to close streets and alleys, but providing that due compensation shall first be made to abutting landowners upon such streets and alleys. However, as hereinbefore stated, the Mississippi State Highway Commission, instead of the municipality, has virtually closed the street in question, and without lawful authority so to do under any statute enacted in that behalf.

In the Tomaszewski case, supra, the Court said: "It is a well settled rule that a lot owner's right to object

to the vacation of a part of a street depends upon whether his lot abuts upon or comes in actual contact with the vacated portion, or access to his lot is entirely or materially cut off by reason of the vacation. * * * If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of being less direct to other points in the city, and made so by the vacation of the street in another block, such consequence is *damnum absque injuria,* * * *.' "

There is nothing on the face of the amended bill of complaint or in the exhibits thereto to show that Hamilton Road was not blocked or partially impaired on that portion of the Hamilton Road where the property of the complainants was abutting. In fact, the drawing or map which is exhibited to the amended bill of complaint clearly discloses that the median strip or neutral ground, running east and west, in the center of Tom Bailey Drive, across the center of its intersection with Hamilton Road, has so divided the complainants' property in half as to amount to an obstruction in that part of Hamilton Road or street on which they are abutting landowners. No other block, or part thereof, separates their property from the closed portion of Hamilton Road.

The appellee next relies on the case of Poythress v. Railroad Co., 92 Miss. 638, 46 So. 139, as authority for its contention that the complainants have no property abutting on the portion of the street that was closed, although it be conceded that they have property abutting on the said street. But we are of the opinion that the Poythress case is distinguishable on its facts from those involved in the case at bar for the reason that, as shown by an accompanying plat appearing in the reported case both in the Mississippi and Southern, the complainants therein, Poythress and wife, were the owners of Lot 12 of Block 25 of the Caldwell Survey of the City of Meridian, at which point they had a storehouse and were engaged in the mercantile business. Lot 12 is in the form of

a parallelogram extending north and south in the southeast corner of Block 25. The storehouse faces Second Street on the south and is adjacent to 27th Avenue on the east. The tracts of the Railroad Company crossed 27th Avenue and Second Street just opposite the corner of the complainants' store, running diagonally in a northeasterly and southwesterly direction, and the Railroad Company had maintained a crossing on 27th Avenue for many years. The said Lot 12 belonging to the complainants does not touch the railroad right-of-way at all. Neither 27th Avenue nor Second Street at their intersection was closed between the lot of the complainants and the railroad right-of-way. What was vacated by the municipality under its statutory authority was Caldwell Street south and east of the railroad right-of-way, and on which street the complainants owned no property; also that part of 27th Avenue between the north line of the railroad right-of-way and extending south across the railroad right-of-way and down to St. Andrews Street. The railroad company owned the property on both sides of the vacated portion of the streets in question.

We think that the case of Town of Clinton, et al. v. Mattie Turner, 95 Miss. 594, being the same case as Alabama & V. R. Co., et al., v. Turner, 52 So. 261, is an authority to support the contention of the complainants to the effect that they are abutting landowners upon Hamilton Road or street within the meaning of Section 3374-127, supra, for the reason that in that case Mattie Turner owned land fronting and abutting on the east and west side of Neal Avenue, or Jefferson Street Extended in the Town of Clinton; in fact, her land was divided by this continuous street. She had built houses thereon, adjusting the same with reference to this street. Two of her houses were near the point where Neal Avenue, or Jefferson Street Extended, touches the southern boundary of the right-of-way of the Alabama & Vicksburg Railway Company, running east and west. These

houses were built at considerable expense to her and fronted on both sides of Neal Avenue. One of these two houses was a storehouse, and the other a boarding house and store combined. The municipal authorities undertook to close the south end of Neal Avenue *near* Mattie Turner's houses, at a point where the Avenue ran into Jefferson Street Extended, and on the boundary of the railroad right-of-way. They also directed the closing of Jefferson Street at the north end thereof as such and at the point where it touched the southern boundary of the right-of-way of the railway company. That is to say, the municipal authorities discontinued the crossing entirely and authorized the railway company to occupy the whole street across the tracks with a new depot, thus barring passage across there from side to side, and in doing this it closed all access south from Neal Avenue to Jefferson Street and from Jefferson Street north to Neal Avenue.

The Court said that ''the first question presented is whether or not Mattie Turner is an abutting property owner, within the meaning of Section 3336 of the Code (of 1906); and we have no hesitancy in saying that she is and that she has all the rights of an abutting property owner under the law.'' That statute was the same in substance as Section 3374-127 here involved. It will be noted from the foregoing statement of facts that Mattie Turner's lots could not have fronted on or toward the railroad right-of-way since they were parallel therewith, extending east and west as did the right-of-way. Such is true of the property of the complainants in the instant case. It was divided by the Tom Bailey Drive in half, and the halves paralleled and were adjacent to such Drive which ran east and west. Their property was the nearest land to the intersection of Hamilton Road with the Tom Bailey Drive of any property located on the west side of Hamilton Road near such intersection. ██ ██ We think that it would be giving the statute an entirely too narrow construction to hold that property so

located does not abut that portion of the street that was closed by the unauthorized act of the appellee. Moreover, the appellee is in no position to urge a strict construction of the words "abutting landowners" used in a statute which confers upon the appellee no authority in the premises, but which is a statute defining who may recover damages for the vacation of a street by municipal authorities.

The writer of this opinion has carefully studied all of the numerous cases cited in the briefs of opposing counsel but it would unduly prolong this opinion to discuss each of them. It is sufficient to say that the decisions of our own Court in the cases hereinbefore discussed and others cited in their briefs furnish a proper guide as to what conclusion should be reached on the issue of whether or not the amended bill of complaint is ample to entitle the complainants to develop the case on its merits.

On the last point, that is to say whether or not the complainants have sustained damages different in kind, even though not in degree, from that sustained by the general public, we think that they are entitled to show whether or not such is the case by a full development of the facts involved.

The action of the trial court in sustaining the demurrer to the amended bill of complaint should, therefore, be reversed and the cause remanded.

Reversed and remanded.

All justices concur.