Muse *v.* Mississippi State Highway Commission

No. 40883 June 9, 1958 103 So. 2d 839

696

698

*Creekmore & Beacham,* Jackson, for appellant.

*Satterfield, Shell, Williams & Buford, K. Hayes Calli-cutt,* Jackson, *Matthew Harper, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

700

KYLE, J.

The State Highway Commission filed its petition or application in the county court of Hinds County to condemn, under its power of eminent domain, a strip of land owned by Mrs. Winnie Robbins Muse lying along the west side of U. S. Highway No. 51 North, about 1¾ miles north of the corporate limits of the City of Jackson. The strip of land sought to be condemned consisted of .61 of an acre, being 45.5 feet deep on the south end and 55.54 feet deep on the north end, and 565 feet in length along the east side and 574 feet in length along the west side.

The Commission, in its petition, sought to acquire the strip of land above described, ''together with any and all abutters' rights in and to said highway appurtenant to defendant's remaining property, including any and all existing rights of access, except that such remaining property shall have access to frontage road which will be connected to said highway only at points established by public authority.''

The Commission in its petition alleged that the strip of land sought to be acquired was to be used in the relocation and reconstruction of a segment of U. S. Highway No. 51 to be constructed as a part of Federal Aid Project No. 1-091-2(14), which had theretofore been des-

ignated by an order of the Commission, dated September 25, 1956, as a "controlled access facility", as defined in Senate Bill No. 1819, Chapter 314, Laws of 1956, a copy of which said order was attached as an exhibit to the petition.

The record shows that, at the time of the filing of the application for condemnation in this case, the State Highway Commission owned a sufficient right of way in front of the Muse property to construct a four-lane highway without acquiring any additional right of way. That right of way had been acquired from Sam D. Morrison and others, Mrs. Muse's predecessors in title, by deed dated September 15, 1948; and under the plans for the project which had been adopted at that time a four-lane highway was to be constructed with a neutral zone or median strip, 30 or 40 feet wide, between the two north-bound traffic lanes and the two south-bound traffic lanes. If the highway had been completed under those plans, with no outside service roads added, the owners of the Muse property would have had direct access to the west or south-bound traffic lanes, but would have been required to drive southwardly to a cross over, before they could have entered the north-bound traffic lane.

The first two-lane section of the highway was completed in 1955. But before any contracts were awarded for the construction of the two additional lanes of the four-lane highway provided for in the original plans the American Association of State Highway Officials, on July 12, 1956, adopted what is known as the "Geometric Design Standards for the National System of Interstate and Defense Highways", and the United States Congress enacted Public Law 627—84th Congress, Title I— Federal Aid Highway Act of 1956, providing for the construction of a National System of Interstate and Defense Highways. U. S. Highway No. 51 was thereafter designated by proper authority as a part of that system; and in accordance with the provisions of Section 112 of said

Title I, Federal Aid Highway Act of 1956, the Commission decided to construct two more lanes for said highway, in addition to the four lanes called for in the original plans. These extra lanes, one on the east side of the highway and the other on the west side of the highway, are commonly referred to as service or frontage roads, but for all practical purposes are to become integral parts of the highway. When the highway is completed, the inside or middle four lanes will consist of two lanes on the east side for north-bound traffic and two lanes on the west side for south-bound traffic, with a neutral zone or median strip, 30 feet wide, in the middle. Along the outer edges of these lanes, there will be constructed the service or frontage roads designed to provide two-way traffic on each such service or frontage road.

The petition or application for condemnation of the strip of land involved in this case was filed on July 1, 1957. Before the case was set for trial in the county court, the defendant's attorneys filed a motion to strike from the petition that part of paragraph 5 which reads as follows: ''except that such remaining property shall have access to frontage road, which will be connected to said highway only at points established by public authority''; and also all of the next succeeding paragraph relating to the order of the State Highway Commission adopted on September 25, 1956. As grounds for the motion to strike, the defendant's attorneys alleged that the portions of the petition sought to be stricken were irrelevant and immaterial on the issue of just compensation to be paid to the defendant for the taking of her land and her right of access to the existing highway; and that the admission of evidence in respect to the matters relating to the so-called frontage road would authorize the jury to set off against damages suffered by the defendant on account of the taking of her land and the right of access to the existing highway, benefits supposed to accrue by reason of the construction of such service road. The motion to strike was overruled. A jury was em-

paneled and the case was tried on August 8, 1957. Before the taking of testimony was begun, the county judge dictated into the record a statement that the case would be tried on the theory that under the petition and the law the defendant had a reasonable limited right of access to the present highway as it then existed; that the defendant was entitled to recover from the plaintiff the difference between the current market value of the property of the defendant as a whole, with said reasonable limited right of access to the highway, and the current market value of the balance of the property remaining after the taking and the construction of the service road; and the court held as a matter of law that the plaintiff was obligated to construct such service road.

The case was tried on the theory embodied in the above mentioned statement of the county judge.

The evidence offered on behalf of the petitioner consisted of the testimony of the right of way agent and the project engineer of the State Highway Department and three appraisers, who testified concerning the fair market value of the property before the taking and the fair market value of that remaining after the taking and the construction of the highway.

Shelby Drummond, right of way agent of the State Highway Department identified a plat of the highway right of way theretofore acquired along the east side of the Muse property and the additional strip of land sought to be acquired for the service or frontage road. The right of way agent stated that when the highway was completed it would consist of four through travel lanes, with a median strip in the middle, and a service or frontage road on each side of the highway to serve abutting property and adjacent areas, such service or frontage roads to be connected with the lanes of travel of the main highway at interchanges at Northside Drive and Briarwood Drive, approximately 850 feet south of the Muse property, and by a grade connection at the

county line approximately one mile north of the Muse property. The service roads or frontage roads were to be constructed for two-way traffic and were to be finished with a double bituminous surface. Drummond stated that the Highway Department already owned the right of way upon which the four-lane highway was being constructed, and that the strip of land which was being acquired from Mrs. Muse was to be used for the construction of the service road running along the west side of the four-lane highway.

Carl Price, project engineer, testified that two lanes of the highway had been constructed on the right of way acquired by the Commission from Sam B. Morrison and others, Mrs. Muse's predecessors in title, by deed dated September 15, 1948. Two more lanes were being constructed just east of the lanes in place at the time of the trial. There was to be a median strip 30 feet wide between the main traveled portion of the highway for north-bound traffic and the main traveled portion of the highway for south-bound traffic. The remainder of the project engineer's testimony was substantially the same as that given by the right of way agent. The three witnesses who were called to testify for the Commission as qualified experts on real estate values, testified that in their opinion the fair market value of Muse's property before the taking was $14,250, and that the fair market value of the property remaining after the taking and the construction of the highway, including the service or frontage road would be $11,750, making a difference in values before and after taking in the sum of $2,500.

Four appraisers testified on behalf of the defendant. Their opinions as to the fair market value of the Muse property before the taking varied from $19,500 to $22,000. Their opinions as to the value of the property remaining after the taking varied from $11,000 to $16,000. Their opinions as to the difference in values before and after the taking ranged from $6,000 to $10,000.

At the conclusion of the evidence the court instructed the jury for the petitioner, State Highway Commission, that the defendant was entitled to due compensation for the part of the land which was being taken for public use and damages, if any, resulting to her as a consequence of the taking, without taking into consideration either general benefits or injuries resulting from the use to which the land taken was to be put, shared by the general public; and that the measure of damages to be awarded to the defendant was the difference between the market value of the whole tract immediately before the taking, and the fair market value of that remaining immediately after the taking and the construction of the highway for public use.

The court also instructed the jury for the petitioner that the petitioner had the right to make U. S. Highway No. 51 North "a limited access highway", and that the Commission had the right to construct the outside lanes to said highway, and that "the defendant Winnie Robbins Muse has not been damaged by the taking of the right of direct access to the inside lanes or main traveled portion of said highway by the construction of the outside lanes to said highway to which the defendant Muse has access, if you believe from a preponderance of the evidence such outside lanes afforded reasonable access to the remaining property of the defendant." The court also instructed the jury for the petitioner that if they believed from a preponderance of the evidence that the Commission had sufficient lands upon which to construct a four-lane highway, the Commission had the right to reasonably regulate traffic on the various lanes of the highway by the construction of median strips or neutral zones, and that abutting property owners were not entitled to damages on account of such regulations, if the jury found from the evidence that such regulations afforded reasonable access to the highway.

The court instructed the jury for the defendant that the defendant was entitled to recover damages, and that

"the measure of said damages is the difference between the fair market value of said lands at the present time and the fair market value of the lands remaining immediately after the taking herein." And the court further instructed the jury that, "in determining the present value of said lands you shall include the right of direct access to U. S. Highway No. 51 North, as presently existing; and in determining the value of the lands remaining after said taking, you shall consider the fact that a strip of land approximately 55½ feet deep at the north end and 45½ feet deep at the south end and fronting on U. S. Highway 51 North has been taken, and that all rights of direct access to said highway have also been taken; but you shall not consider by way of diminishing said damages any benefits common to the general public that may accrue by reason of the construction of any proposed service road." The court also instructed the jury for the defendant that the defendant had the right of direct access to U. S. Highway No. 51 North immediately in front of her lands, "subject only to such reasonable regulations as the Mississippi State Highway Commission has promulgated in the interest of safety;" and that said right was a valuable property right which was being taken by the petitioner, and for the taking of which it was the jury's duty to award to her just compensation; and that "the compensation to be paid to her by reason of the taking of such direct right of access cannot be offset or diminished to any extent by reason of any benefits which may accrue by reason of the construction of any proposed service road."

The court also granted several other instructions to each of the parties. But it is not necessary that we make a more specific reference to those instructions at this time.

The defendant requested several instructions which the court refused to grant, the first four of which are as follows:

"The Court instructs the jury for the defendant, Mrs. Winnie Robbins Muse, that she has the right of direct access to U. S. Highway No. 51 North immediately in front of her lands subject only to such reasonable regulations as the Mississippi State Highway Commission has promulgated in the interest of safety; that while the said commission has the right to construct a median strip on said highway dividing the north-bound and south-bound lanes of traffic in front of her property, yet the said commission cannot so construct such median lane if the same restricts her right of access to the main traveled portions of said highway in either direction, unless it first pay to her due compensation for the restriction, if any, of her right of direct access to said highway in each direction."

"The Court instructs the jury for the defendant, Mrs. Winnie Robbins Muse, that in determining the fair market value of the lands of the defendant, Mrs. Winnie Robbins Muse, before the taking involved in this suit, you shall consider the highest and best use to which said lands may profitably be put at the present time with the right of direct access to Highway No. 51 North; and in determining the value of her said lands after the taking involved in this case you shall consider the highest and best use to which said remaining lands may profitably be put without the right of direct access to U. S. Highway No. 51 North, and you shall not consider any benefits which may accrue to the remaining lands by reason of any proposed service road."

"The Court instructs the jury for the defendant, Mrs. Winnie Robbins Muse, that the compensation to be paid to her as damages in this case must be in money, and the amount of such money damages cannot be diminished or reduced to any extent by reason of any supposed benefits which may accrue by reason of the construction of any proposed service road."

"The Court instructs the jury for the defendant, Mrs. Winnie Robbins Muse, that, in this case, she is entitled to due compensation not only for the value of her land actually taken, but also for the value of the right of direct access to Highway No. 51 North as the same now exists, and also for such damages, if any, as may result as a consequence of the taking of said land and said right of access; and in determining the amount of such damages you shall not consider any benefits which may accrue by reason of the construction of any proposed service road."

The jury returned a verdict in favor of the defendant for the sum of $2500, and judgment was entered for that amount. The defendant, being dissatisfied with the amount of the judgment, appealed the case to the circuit court, and that court entered an order affirming the judgment of the county court. The case is now before us on appeal by the defendant from the judgment of the circuit court.

The first point argued by the appellant's attorneys as ground for reversal of the judgment of the lower court is, that the Commission had no right, under the deed from Sam D. Morrison and others, dated September 15, 1948, or otherwise, to provide for a median strip between the north-bound lanes of traffic and the south-bound lanes of traffic on the four-lane highway, which would restrict the appellant's right of access to the main traveled portions of the highway in either direction, without the payment to the appellant of just compensation for such restriction of her right of access; and that the court erred in admitting testimony offered on behalf of the Commission as to the value of the appellant's property before and after the taking, which was based upon the premise that the Commission had a right to provide such median strip and thereby limit the appellant's right of access without the payment to her of just compensation therefor; and that the court erred in refusing to grant

the appellant's requested instruction that the Commission had no right to provide for such median strip, if the construction of such median strip restricted the appellant's right of access to the main traveled portions of the highway in either direction, unless the Commission first paid to the appellant due compensation for such restriction.

In support of their contention on that point, the appellant's attorneys say that the only authority which the Commission had under the law in effect at the time the above mentioned deed was executed, in respect to limiting direct access to such highways, was the power to restrict entrance from the abutting property to the main highway in the interest of safety; and that it was not until the statute was amended in 1949 by the enactment of Chapter 6, Laws of Extraordinary Session 1949, that the Commission had any authority whatsoever to provide limited access facilities; and that it was not until the enactment of Chapter 314, Laws of 1956, that the Legislature adopted a complete scheme for the building of controlled access facilities and authorized the State Highway Commission to acquire access rights of abutting property owners upon the payment of just compensation therefor.

But we think the appellant's attorneys have failed to take into account the powers vested in the State Highway Commission prior to the enactment of the two statutes mentioned above, and more specifically the powers vested in the Commission by Chapter 332, Laws of 1948, which was in effect at the time the Commission acquired title to the right of way for the four-lane highway. In Section 14, paragraph (d), of said Chapter 332, the Commission was vested with power, ''To make and publish rules, regulations and ordinances for the control of and to police the traffic on the state highways,'' and in Section 14, paragraph (h), of said Chapter 332, the Commission was vested with power, ''To provide for boulevard

stops, restricted entrances to main highways and access driveways, neutral grounds and roadside parks, and to erect all suitable direction and warning signs, and to provide access roads in or to municipalities where necessary." In Rand v. Mississippi State Highway Commission, 191 Miss. 230, 199 So. 374, a case decided long before the Commission acquired title to the right of way for the four-lane highway in this case, the Court said: "Neutral strips between lanes on heavily traveled highways have become an approved feature in modern highway construction and maintenance."

 In discussing the power of the state to control and regulate the public highways and their use, the text-writer in 40 C. J. S., 240, Highways, Par. 232 a, says:

"As the highways of the state are public ways, see supra Sec. 1, they are subject to public control. Thus, subject to constitutional restrictions, the state, through its legislature, has primarily the power to control and regulate public highways and the use thereof, subject only to limitations of reasonableness and equality and to the requirement that regulations do not unreasonably interfere with the right of travel or other proper public uses of the highways, although the power cannot be restricted within too narrow bounds. This power is an exercise of the police power of the state to protect the highways, and promote the safety, peace, health, morals, and general welfare of the public."

 In Jones Beach Boulevard Estate v. Moses, 268 N. Y. 362, 197 N. E. 313, 100 A. L. R. 487, the Court, in discussing the rights of an abutting landowner to an easement of access in a public highway and the right of the state to regulate and control traffic on the public highways, said: "The rights of an abutter are subject to the right of the state to regulate and control the public highways for the benefit of the traveling public. Sauer v. City of New York, 180 N. Y. 27, 72 N. E. 579, 70 L. R. A. 717; Ryan v. Preston, 59 App. Div. 97, 69 N. Y. S. 100.

See Perlmutter v. Greene, 259 N. Y. 327, 182 N. E. 5; Kane v. N. Y. El. R. Co., 125 N. Y. 164, 176, 26 N. E. 278, 11 L. R. A. 640. Cf. Miller v. State, 229 App. Div. 423, 243 N. Y. S. 212; Farrell v. Rose, 253 N. Y. 73, 170 N. E. 498, 68 A. L. R. 1505. ██ █ Although the abutting owner may be inconvenienced by a regulation, if it is reasonably adapted to benefit the traveling public, he has no remedy unless given one by some express statute.''

██ █ In the very recent case of Carazella v. State of Wisconsin, 269 Wis. 593, 71 N. W. 2d 276, the Court said:

''The general rule is that damage resulting to property through the exercise of the police power is not compensable. We consider the following statement appearing in 11 McQuillin, Municipal Corporations (3rd ed.) p. 319, sec. 32.27, to be particularly pertinent to the facts of the instant case: 'The question of what constitutes a taking is often interwoven with the question of whether a particular act is an exercise of the police power or of the power of eminent domain. If the act is a proper exercise of the police power, the constitutional provision that private property shall not be taken for public use, unless compensation is made, is not applicable.' ''

In the case of State, By and Through State Highway Commission v. Burk, 200 Oregon 211, 265 P. 2d 783, the Court in discussing the police power of the state, through its legislature, to control and regulate public highways and the use thereof, said:

''Private rights relative to highways may be regulated in many ways under the police power, and that without compensation. If the action of the state amounts to a 'taking', then the principles based upon the constitution control and the state must proceed by condemnation. Unfortunately, the statement of the formula does not answer the questions involved. In general, the regulation of highway traffic is within the police power. This includes the establishment of

one-way streets, the establishment of traffic lanes, regulations as to speeding and parking, regulations of abutting owners, along with the general traveling public involving circuity of travel, as where one living on a southbound divided street desires to go north, regulations limiting permissible ''U'' turns, and changes in the highway system resulting in the reduction or increase of the volume of traffic on the highway fronting the property of an owner. See Clarke, The Limited Access Highway, 27 Wash. Law Rev. 111; Cunnyngham, The Limited Access Highway, 13 Mo. Law Rev. 29; State ex rel. Suksdorf v. Superior Court in and for Klickitat County, 169 Wash. 195, 13 P. 2d 460; 25 Am. Jur., Highways, Par. 253; 40 C. J. S., Highways, page 240, par. 232; Jones Beach Blvd. Estate v. Moses, 268 N. Y. 362, 197 N. E. 313, 100 A. L. R. 487; City of Chicago v. Spoor, 190 Ill. 340, 60 N. E. 540; Rose v. State of California, 19 Cal. 2d 713, 123 P. 2d 505; City of Stockton v. Marengo, 137 Cal. App. 760, 31 P. 2d 467.''

■■ It is undoubtedly true that the abutting landowner on a conventional public highway has a special right of access and user in the highway; and that right is a property right which cannot be damaged or taken from him without due compensation. The right of access is appurtenant to his land, and to destroy that right is to damage his property. Morris v. Covington Co., 118 Miss. 875, 80 So. 337; Jackson v. Monroe County, 124 Miss. 264, 86 So. 769; City of Jackson v. Welch, 136 Miss. 223, 101 So. 361; Town of Clinton v. Turner, 95 Miss. 594, 52 So. 261; Smith v. Mississippi State Highway Commission, 183 Miss. 741, 184 So. 814; Puyper v. Pure Oil Company, 215 Miss. 121, 60 So. 2d 569; Hamilton v. Miss. State Highway Commission, 220 Miss. 340, 70 So. 2d 856. But there is also a coexistent right belonging to the public, to use and improve the highway for the purpose of travel; and the owner of the abutting land has no absolute right,

as against the public, to insist that the adjacent highway always remain available for his use in the same manner and to the same extent as when it was constructed. Land condemned for highway purposes without limitation as to surface use is at all times under the control of the highway authorities, which may make such use of the land as may be required; and the abutting landowner's right of access and user are subject to the right of the state under the police power to regulate and control the traffic on the highway in the interest of safety, and to restrict in a reasonable manner entrances from abutting property.

 As the problem of regulating motor vehicle traffic on the highways has become more and more complex, new standards of design for highway construction have been adopted by the highway authorities to reduce the hazards of travel and expedite the flow of traffic. Rules and regulations have been adopted by highway authorities in the cities and towns, which provide for the establishment of one-way streets and traffic lanes, prohibiting left-hand turns at intersections in crowded areas, and restricting the parking of motor vehicles on the streets in down-town shopping centers. Such rules and regulations have been recognized by all of the authorities as a valid exercise of the police power. Multiple lane highways have been constructed in all parts of the country; and median strips or neutral zones between lanes of. traffic on multiple lane highways, with interchanges or crossovers at reasonable intervals to enable motorists to pass from one traffic lane to another, have been authorized and provided for in the standards of design adopted for the construction of such highways. Such median strips or neutral zones provide for a complete separation of traffic moving in opposite directions, and reduce the hazards incident to motor vehicle travel; and the establishment of such median strips or neutral zones have been recognized as a proper exercise of the police power. Rand v. Mississippi State Highway Commission,

191 Miss. 230, 199 So. 374; Commonwealth v. Nolan, 189 Ky. 34, 224 S. W. 506, 11 A.L.R. 202; Jones Beach Blvd. Estate v. Moses, supra; City of Fort Smith v. Van Zandt, 197 Ark. 91, 122 S. W. 2d 187; Impagliazzo v. Nassau County, 123 N. Y. S. 2d 819.

■■■ The State Highway Commission in our opinion had a right to construct the median strip in the four-lane highway referred to in the record that we now have before us, without payment of compensation to the appellant for damages resulting therefrom, even though the construction of such median strip would have the effect of restricting the appellant's right of access to the east or north-bound traffic lanes, provided crossovers were made available at reasonable intervals to permit passage of vehicles from one side of the highway to the other. It is true that the median strip may cause some inconvenience to the abutting property owners; but such inconvenience is an inconvenience shared by the general public as an incident to a proper exercise of the police power.

■■ ■ But even, if the appellant's claim for compensation for the restriction imposed upon her right of access to the east lanes of the four-lane highway had been valid otherwise, no liability for the payment of such compensation would have existed under the facts disclosed by the record in this case for the reason that, when the Commission acquired title to the 6.1 acres of land lying along the east side of the land owned by Sam D. Morrison and others in 1948 for the construction of the four-lane highway, the Commission had adopted plans and specifications for the four-lane highway, which provided for a median strip or neutral zone between the north-bound traffic lanes and the south-bound traffic lanes; and the right of way deed executed by Sam D. Morrison and others recited that the consideration paid to the grantors in that deed was paid in settlement of any and all claims or demands for damages "accrued, accruing or to accrue to the grantors, their heirs, assigns, or legal representa-

tives, for or on account of the construction of the proposed highway, change of grade, water damage, or any other damage, right or claim whatsoever.'' That receipt and release was binding upon the successors in title to the grantors therein. The record shows that work on the two west lanes of the four-lane highway was completed sometime during the year 1955. But the Commission still had a right to construct the two additional lanes when money was made available therefor; and no further liability existed for the payment of additional compensation to the appellant for damages resulting from the construction of the four-lane highway according to the above mentioned plans and specifications. State Highway Commission v. McClendon, 212 Miss. 18, 53 So. 2d 35.

 It is next argued on behalf of the appellant that the court erred in overruling the appellant's motion to strike from the petition all reference to the construction of the service or frontage road along the east side of the land remaining after the taking of the strip sought to be condemned, and all reference to the fact that the service road would provide access to the main traveled lanes of the highway; and that the court erred in admitting the testimony of the appellee's witnesses relating to the construction of such service or frontage road.

But we think there was no error in the court's action in overruling the appellant's motion to strike from the petition all reference to the service or frontage road, or in the court's action in admitting the testimony of the appellee's witnesses relating to the construction of the service or frontage road. If the court had sustained the appellant's motion to strike and excluded all testimony relating to the construction of the service or frontage road, the case would have been tried as a ''landlocked'' case, and the jury would have been required to award damages based upon a false assumption that the taking of the strip of land sought to be condemned would leave the appellant without any right of access to the highway.

The record shows that the purpose for which the strip of land was to be acquired was to provide a frontage road for service to abutting property and adjacent areas; and there is nothing in the record to justify the assumption that the taking of the additional strip of land which was to be used for the construction of the service or frontage road, would result in the appellant being deprived of all access to the highway.

Section 8023, Code of 1942 Recompiled (Sec. 14, Ch. 6, Laws of Extraordinary Session 1949), provides as follows:

"The estate which the state highway commission is authorized to acquire by deed or condemnation as set forth above shall include all rights, title, and interest in and to the lands or property being acquired excepting and excluding all the oil and gas therein or thereunder, and such other rights, title or interest which are expressly excepted and reserved to the property owner, his successors, heirs or assigns in the deed or condemnation petition by which the property is acquired, and the state highway commission shall decide what rights, title and interests are necessary for highway purposes on each particular project and may by order on its minutes authorize its agents to expressly except all or any others."

It was the duty of the Commission in this case to decide what rights, title, and interest in the appellant's land were necessary for highway purposes on this particular project; and what rights should be reserved to the property owner. The Commission decided that the abutting property owners should retain the right of direct access to the outside lane or the so-called service or frontage road, and that such right should be excepted from the condemnation petition and reserved to the abutting property owners. The appellant was therefore not entitled to have her damages assessed on the theory that she would be denied access to such outside lane or service or frontage road.

██ ██ The rule is well settled by the decisions of our own Court that when a part of a large tract of land is taken for public use, the owner should be awarded damages in the amount equal to the difference between the fair market value of the whole tract immediately before the taking, and the fair market value of that remaining immediately after the taking, without considering general benefits or injuries resulting from the use to which the land taken is to be put, that are shared by the general public. State Highway Commission v. Hillman, 189 Miss. 851, 866, 198 So. 565, and cases cited. It was therefore necessary that the full facts be developed in order that the jury might be able to determine the amount of damages which the appellant was entitled to receive under the rule thus stated.

The appellant's attorneys admit that the rule thus stated in State Highway Commission v. Hillman, supra, is the rule to be applied in this case. But the appellant's attorneys say that this Court has also held that the damages to be paid to the property owner must be ascertained as of the immediate time of the taking, that the compensation must be paid in money, and that the compensation cannot be offset or diminished by reason of supposed benefits arising from the improvement; and for that reason all reference to the construction of the service road should have been excluded. And the appellant's attorneys cite in support of their contention Brown v. Beatty, 34 Miss. 227; Isom v. Miss. Central R.R. Co., 36 Miss. 300; Penrice v. Wallis, 37 Miss. 172; Romano v. Y. & M. V. R.R. Co., 87 Miss. 721, 40 So. 150; State Highway Commission v. Chatham et al., 173 Miss. 427, 161 So. 674; and State Highway Commission v. Buchanan, 175 Miss. 157, 165 So. 795, 166 So. 537. But we think that none of those cases are controlling here.

██ ██ The courts have generally held that any fact tending to reduce the damages otherwise accruing to the owner, such as restriction on the appropriator's use of

the property and reservation to the owner of some right therein, may be considered in assessing damages in condemnation. The rule relating to proof of such facts is stated in 29 C. J. S., 1014, Eminent Domain, par., 155, as follows: ''Any fact which, by reason of the conditions upon which the property is taken, or the character of the improvement or the manner in which it is made, or the nature and situation of the property taken, or of the residue, tends to ameliorate, counteract, diminish, mitigate, or reduce the damages otherwise accruing to the owner, may properly be considered in favor of the appropriator in the assessment of damages, although the benefit is not one necessarily accruing from the construction of the improvement. Thus the fact that the use sought to be appropriated is a restricted or limited use and one which will reserve to the owner some right in the property affected should be considered in assessing damages; and a stipulation entered into between the owner and the appropriator whereby some right or privilege is granted to the owner or reserved by him with reference to the property or its use may properly be considered in reduction of the compensation to which he would otherwise be entitled.''

This Court has recognized in several cases the principle set forth in the text quoted above.

In Warren County v. Rand, 88 Miss. 395, 40 So. 481, the Court held that in an action for damages to abutting property caused by a change of grade in a highway the measure of damages is the difference in the market value of the property before and after the change, excluding benefits accruing to plaintiff in common with the general public, to be ascertained by considering the location of the property, its adaptability, the uses to which it was put, and the effect of the change on its accessibility.

In the case of Schlicht v. Clark, 114 Miss. 354, 75 So. 130, which was a suit by drainage commissioners in an eminent domain court to condemn land for the construction of a drainage canal, the Court in its opinion said:

"We think the true rule of estimating damages in cases of this kind is laid down in City v. Higgins, 81 Miss. 376, 33 So. 1, and is the difference in the market value of the property with the improvement and that without it, without considering general benefits or injuries shared by the public in general. See, also, note to O'Brien v. Philadelphia, 30 Am. St. Rep. 840; Warren County v. Rand, 88 Miss. 395, 40 So. 481; Miss. Digest (Bobbs-Merrill) title 'Eminent Domain,' sections 122 to 144, inclusive. See, also, 5 Enc. Ev. p. 204, title, 'Eminent Domain,'' where the rule is stated as follows:

" 'Specific Elements of Compensation.—Evidence as to the particulars or details in which the property will be damaged or benefited by the improvement is admissible so far as the same tends to show the effect of the improvement on the value of the property, but these elements are not admissible as independent items of damage or benefit.'

"The rule is not different in drainage districts than from other cases of proceedings under eminent domain."

In the case of State Highway Commission v. Hillman, supra, which was an eminent domain case, the Court in its opinion said:

"The compensation awarded the landowner in an eminent domain proceeding is conclusively presumed to include all damages resulting to him from the proper use of the land taken, here specifically from the proper construction of the contemplated highway. * * * Injuries to the appellees' remaining land from the use to which that taken is to be put affect, of course, its market value. Cf. Mississippi State Highway Comm. v. Prewitt, 186 Miss. 778, 192 So. 11. * * *

"The appellees' evidence that the appellant had been requested, but refused, to construct a passageway under the highway connecting the two severed portions

of the appellees' property, and that had it been constructed the appellees' damages would have been greatly reduced thereby, should not have been admitted. The appellant was under no duty to construct such an underpass. Of course, it could have, had it so desired, constructed an underpass, and it may be that the market value of the remainder of the property would have been thereby enhanced, thus lessening the damages it would have to pay the appellees; but, it was under no duty to do this.''

In the case of Baker v. Mississippi State Highway Commission, 204 Miss. 166, 37 So. 2d 169, which was an action for damages to the plaintiff's business and property resulting from the raising of the road, the Court again said: ''It is settled that in eminent domain proceedings the measure of damage to the property not actually taken is the difference between the fair market value of such property before, as compared to such value after, the taking. State Highway Commission v. Day, 181 Miss. 708, 180 So. 794; Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565; Mississippi State Highway Commission v. Treas, et al., 197 Miss. 670, 20 So. 2d 475.'' The Court then discussed at length prior decisions relating to the measure of damages in such cases, and in its opinion said:

''Therefore, in order to make certain the rules by which damages are to be ascertained, and evidence is to be competent, in cases of the type at bar, we now restate the rules:

''1. In the usual, ordinary case the measure of damage is the difference between the fair market value of the property before, as compared to such value after, the work is done.

''2. If the property has no market value, the measure of the damage is the difference between the fair, reasonable value before, as compared to such value after, the work is done. * * *''.

The theory upon which the case that we have here was tried was fair to the landowner and fair to the Commission. The damages were assessed in conformity with the rule laid down by this Court in Mississippi State Highway Commission v. Hillman, supra, which has been reaffirmed by this Court in several later cases. The appellee was not entitled to have the case tried as a "landlocked" case, when the petition for condemnation of the strip of land showed that the appellant's remaining property would have direct access to the frontage or service road, which would be connected by crossovers with the through travel lanes of the highway at points established by public authority.

Finally, it is argued that the court erred in granting certain instructions to the appellee and in refusing certain instructions requested by the appellant.

■■ It is first argued that the court erred in granting appellee's Instruction No. 6, in which the jury was told that, if they believed from a preponderance of the evidence in the case that the State Highway Commission had sufficient lands on which to build a four-lane highway, the Commission had the right to reasonably regulate traffic on the various lanes of the highway by median strips or neutral zones, and that abutting property owners were not entitled to damages on account of such regulations, if the jury found from the evidence that such rules and regulations afforded reasonable access to the highway.

It is argued that the court erred in granting the above mentioned instruction for the reason: (1) That the instruction was not based on evidence, in that the regulations of the State Highway Commission were not introduced; and (2) that the jury was told peremptorily that the Commission had a right to restrict the appellant's right of access to the main travel lanes of the highway in one direction on the highway, and for such restriction the appellant was not entitled to compensation. The sec-

ond objection to the instruction has already been answered by us in this opinion; and we also think there is no substantial merit in the first objection to the instruction. While it is true that no copy of the formal regulations relating to the operation of traffic on the various lanes of said highway was offered in evidence, witnesses who testified on behalf of the Commission and on behalf of the appellee stated in detail how a motorist traveling on the through lanes of the highway might enter or leave the appellant's remaining land by the use of the service road, which was to be connected with the through lanes of the highway by crossovers or interchanges at Briarwood and the county line. Full details were given concerning the locations of the crossovers or interchanges. A comprehensive set of plans and specifications of the highway were introduced; and all of the above mentioned details were shown on said plans and specifications.

 It is also argued that the court erred in granting the appellee's instructions numbered 5 and 7, which have been included in the summary of the appellee's instructions set forth above in this opinion. The two instructions permitted the jury to consider the accessibility of the appellant's land prior to the construction of the outside lane or service road and the accessibility of the land after the construction of the outside lane or service road; and we think there was no error in the court's action in granting the two instructions. The appellant also complains of the court's refusal to grant two of the four instructions marked ''refused'', to which specific reference has been heretofore made. But for reasons already stated, we think there was no error in the court's action in refusing to grant those instructions.

We find no reversible error in the record and the judgment of the lower court is therefore affirmed.

Affirmed.

All Justices concur.