BEAVER DAM DRAINAGE DISTRICT *v.* McCLAIN et al.

No. 41973 October 23, 1961 133 So. 2d 615

*Cooper & Allen,* Indianola, for appellant.

*Neill, Clark & Townsend,* Indianola, for appellees.

GILLESPIE, J.

Suit was filed in chancery court by appellees, owners of land traversed by a drainage canal, against appellant, Beaver Dam Drainage District, seeking a mandatory injunction requiring the Drainage District to rebuild and restore a facility for crossing the drainage canal constructed and maintained by the Drainage District, so as to furnish landowners reasonable means of crossing the canal, or, in the alternative, a decree for damages. Appellees also sought general relief.

Prior to 1944 the system of drainage ditches or canals theretofore constructed and maintained by Beaver Dam Drainage District, herein called District, emptied into Bear Bayou, a natural waterway, and flowed for about

2.7 miles where Bear Bayou emptied into Porter Bayou. Bear Bayou ran through the lands of appellees, herein called Landowners, so as to divide each of the two parcels of land owned by Landowners. The two parcels of land owned by Landowners were contiguous. The record is not clear as to whether Bear Bayou contained water the year round prior to 1944, but it does appear that the Landowners could cross it with farm machinery then in use. Bear Bayou was about 200 feet wide. The two parcels of land owned by Landowners are known as the W. W. Gresham land and the McClain land. The District now makes some contention to the contrary, but the bill of complaint averred and the answer admitted that the lands belonging to Landowners was outside the District in 1944. Whether the lands were in or outside the District is immaterial.

In 1944, the District found it necessary to construct a canal in the bottom of Bear Bayou by dredging out a ditch or canal about 12 feet wide at the bottom and running the length of Bear Bayou. In other words, Bear Bayou would be deepened by constructing a canal 12 feet wide along the center thereof. This would enable the water to flow through and into Porter Bayou at a faster rate. The owners of the Gresham land and five of the eight owners of the McClain lands, along with other landowners, signed the following petition giving the District the authority to construct the canal in Bear Bayou:

"TO THE HONORABLE BOARD OF COMMISSIONERS OF BEAVER DAM DRAINAGE DISTRICT OF SUNFLOWER COUNTY, MISSISSIPPI:

"Your petitioners, the undersigned, who own the lands or a part of the lands over which, through and across which a new drainage canal is proposed to be constructed in accordance with the plans and specifications therefor on file with the Clerk of the Chancery Court of Sunflower County, Mississippi, in Cause No. 5735 (File 2

in said cause), in the office of said Clerk, respectfully represent that we are in favor of the construction of said new drainage canal as proposed, and in order to induce the Board of Commissioners of said drainage district to have constructed the said new drainage canal, and in consideration thereof and of the benefits accruing and to accrue to us by the construction of said drainage canal, we do hereby give and grant unto the Board of Commissioners of the Beaver Dam Drainage District of Sunflower County, Mississippi, and unto the said District, the right to construct said new drainage canal, *as shown by the said plans and specifications, and maintain the same,* through, over and across the lands owned by us, respectively, over, through and across which the said new drainage canal is to be constructed, which said new drainage canal or ditch, as shown by the said plans and specifications, is located in Section Thirty-five, Township Twenty, North, Range Five West, and Sections One and Two, Township Nineteen, North, Range Five West, Sunflower County, Mississippi, and do hereby release the said Beaver Dam Drainage District and the Commissioners thereof from all damages arising from the construction and maintenance of said canal, and there is hereby granted to them the right to ingress to and egress from the said lands for said purposes.

"THIS PETITION is signed and the above rights granted on the condition and provided that the lands not now assessed for benefits shall not be assessed for benefits for the improvements above referred to. (Emphasis ours)

"RESPECTFULLY SUBMITTED"

The plans and specifications referred to in the petition showed two 30-inch culverts and a crossing on the Gresham lands near where the Gresham and McClain lands joined. The canal was constructed along Bear Bayou and the two culverts 30 inches in diameter were laid on the bottom of the canal, and a fill placed across

Bear Bayou suitable for use of the owners of the Gresham and McClain lands in crossing the canal, and the Landowners and their lessees used said crossing, known as the Gresham crossing, until 1948. Between 1944 and 1957, two additional culverts were added to take care of additional water, and W. W. Gresham furnished some of the culvert. The District installed the additional culverts.

In 1958, pursuant to a contract between the District and A. J. Busch, the latter undertook to clear and grub Bear Bayou and enlarge the canal therein by making it wider and deeper. This work was done in accordance with plans and specifications prepared for the District. In the course of this work, the Gresham Crossing was altered by adding one additional culvert, which was furnished by Gresham, and lowering the culverts several feet. On account of the lowering of the culverts, the dirt fill constituting the Gresham Crossing had steeper slopes. This, together with an increased volume of water, caused the fill to cave in and wash out so that the Gresham Crossing was no longer suitable for use by the landowners in moving farm machinery from one part of their property to the other. This lawsuit resulted.

The chancellor entered a final decree in favor of the Landowners for $1,400 damages. The decree then adjudged as follows:

"That BEAVER DAM DRAINAGE DISTRICT, be, and it is hereby, expressly relieved of any future obligation or responsibility to maintain said culvert crossing and fill, that is, the crossing over Bear Bayou, herein designated as "Gresham" Crossing, situated along the South side of lands of complainant, W. W. GRESHAM, and just North of lands of complainants, JENNIE EDNA McCLAIN and BERNICE McCLAIN SHAPPLEY. Complainants, JENNIE EDNA McCLAIN, BERNICE McCLAIN SHAPPLEY and W. W. GRESHAM, are given and granted the right and privilege, through their

agents, representatives or employees, to repair and maintain said crossing and fill; . . . . .''

The District contends (1) that the District had no authority to place the culverts in the drainage canal and provide a crossing for use of the owners of the Gresham and McClain lands, and that the acts of the District in providing the crossing when the canal was constructed in 1944 was ulta vires; (2) that there was no duty on the District to restore the crossing after it washed out and caved in following the work done in the canal in 1958; (3) Landowners are not entitled to any damages on account of the 1958 work by the District's contractor which resulted in the crossing becoming unusable, and (4) that the court should not have provided in the decree that the Landowners would have the right to repair and maintain the crossing. We understand these to be the main contentions of the District on this appeal.

The statutes providing for the creation and operation of drainage districts are contained in Chapter 7, Vol. 4, Mississippi Code of 1942, Recompiled. █ Such districts have no power not given them by the statutes. The District points out Sections 4579 and 4739, Mississippi Code of 1942, as the source of the District's power, as well as a statement of the purposes for which drainage districts are organized. Section 4579 provides that drainage districts ''. . . . are given full power and authority to construct or to cause to be constructed, such artificial main drains and ditches, and lateral drains and ditches, and tile drains over the lands of others or over or on lands which may be acquired by said district, and to alter, deepen or improve, any and all natural drains and water courses as may be necessary to alter, deepen, or improve for the purposes of carrying out its purposes, so that a complete system of such drains may exist in the district for agricultural and sanitary purposes, and may also, in addition to the construction of such drains, construct or erect such levees over the lands of others,

or over the lands to be acquired by the drainage district or commission for that purpose, as may be necessary to protect or reclaim any lands from overflow from any source.''

Section 4739, Mississippi Code of 1942, is as follows: ''Additional powers given to certain drainage districts. Any drainage district operating under the provisions of this article, having as its purpose and object a comprehensive and general plan to control overflow and surplus water of rivers and their tributaries, is hereby given the power, in addition to the foregoing powers given by this article, to construct and maintain by-passes, for conveying surplus and overflow waters by means of ditches, canals, floodways, levees, conduits, or other artificial means by shorter and more direct route from tributaries of natural streams, and their watersheds, to their main water course, and from one point in a natural water course to another point therein; provided, however, said by-passes, ditches, canals, floodways, levees, or conduits shall empty the water directly into the same watercourse to which it would naturally flow.''

Other sections of the chapter on drainage districts provide for the acquisition of the necessary right of way. The statutes provide for procuring such right of way by ''agreements'' or ''by contract'' with the landowner or, upon failure to agree, how the right of way may be procured.

We are of the opinion that the statutes contemplate that drainage districts have the authority to so construct canals and drains so that owners whose lands are divided by the canal or drain could cross with farm vehicles. The districts are specifically authorized to construct and maintain ''conduits'' or ''other artificial means'' for conducting water. The right to place culverts in a canal and to cover the culverts with earth to provide a crossing for landowners whose lands are divided by the canal enables the District to lessen the severance dam-

ages. If the Districts had no power to thus lessen the severance damages, when the right of way is acquired the landowner whose lands are to be severed would be entitled to larger damages because he would have no access from one part of his land to the other. The eminent domain cases reveal that when land is acquired for right of way purposes the after value is greatly decreased when access from one part of the property to the other is denied.

The statutes provide for the filing of plans and specifications showing the nature of the construction when the system is established. This was done in this case prior to the time Landowners signed the petition consenting for the canal to be constructed in Bear Bayou, and the culverts and crossing on the Gresham land were shown on these plans and specifications. The extent of the easement thus acquired by the District over the Gresham and McClain lands was measured by the plans and specifications. The waiver of damages contained in the permission or easement signed by the Landowners waived only such damages as they sustained by the proposed construction as shown by the plans and specifications. These plans and specifications showed the Gresham Crossing providing access from one part of their lands to the other, and that access was not acquired by the District. If the Landowners had not consented to the construction of the canal by signing the petition waiving damages, and the commission had proceeded to acquire the right of way in the manner provided by law, it would have been the duty of the District to show what rights would be reserved to the property owner, and the damages would be lessened accordingly. Cf. Muse v. Miss. State Highway Commission, 233 Miss. 694, 103 So. 2d 839. In the present case, the proof showed that landowners would have to travel about ten miles to reach the other side of their property if they did not have the use of the Gresham Crossing. It readily ap-

pears, therefore, that the right to use the Gresham Crossing was vital to the landowners and its absence from the plans and specifications would have largely increased their damages.

In Mississippi State Highway Commission v. Prewitt, 186 Miss. 778, 192 So. 11, this Court recognized that the Highway Commission was under no duty to construct an underpass connecting the two severed portions of lands over which a highway was constructed, but the Commission could have constructed the underpass and enhanced the market value of the remainder of the property, thus lessening the damages it would have to pay the landowner.

■■ ■ The laying of the culverts in the canal in 1944 and establishing the Gresham Crossing was not an ultra vires act of the District. It was a part of the system of canals constructed for the purposes of the District. We think the statutes authorized the construction. It was a part of the canal, and the crossing lessened the damages to the Landowners.

Sections 4622 and 4721 refer to canals crossing highways. They have no application here. No highway is involved.

■■ ■ There was no absolute duty on the District to restore the Gresham Crossing after it was rendered unusable as a result of the work done in the canal in 1948. Failure to do so, however, gives rise to the question of damages to Landowners.

We next consider the question whether the Landowners were entitled to damages resulting from the acts of the District which rendered the Gresham Crossing unusable.

The resolution of this question requires an understanding of the legal relations of the Landowners on the one hand and the District on the other, after the canal was constructed in Bear Bayou in 1944. The District had an easement entitling it to maintain the canal as constructed. The Gresham Crossing was a part of

the construction. The Landowners had the right to use the Gresham Crossing for the purposes of crossing the canal. This access was a valuable right which could not be taken from the Landowners by the District without first paying due compensation. Section 17, Constitution of Mississippi.

In Mississippi State Highway Commission v. Muse, supra, the Highway Commission took the right of direct access to a controlled or limited access highway. The Highway Commission was allowed to show, however, that the plans and specifications for the new construction called for the construction of a frontage road to which Muse, the landowner in that case, would have access from his remaining land. This limited use reserved to the owner increased the market value of the remaining lands and lessened the damages to that extent. No one could successfully argue that Muse would not be entitled to damages if the Highway Commission subsequently takes away the right of access to the frontage road.

We are, therefore, of the opinion that when the Gresham Crossing was rendered unusable as a crossing as a result of the improvements made to the canal in 1948, a cause of action for damages arose in favor of the Landowners.

 The next question is whether the court erred in providing in the decree that the Landowners would have the right to maintain the Gresham Crossing. We think this was error. The proof shows that between 1944 and 1957 two additional culverts had to be added to take care of increasing volumes of water, and that in 1948 an additional culvert was required. The proof also showed that further changes will probably be required in the future.

We are of the opinion that the District has exclusive control over the maintenance of the drainage canal, and the statutes do not contemplate that private land-

owners should have the perpetual right to maintain such a crossing. If the District finds it necessary at any time in the future to reconstruct or abolish the Gresham Crossing, it would be confronted with the decree granting the Landowners the right to maintain it; for the District does have the right to alter or abolish the Gresham Crossing if necessary, but it could do so only after due compensation is paid to the Landowners.

The nature of the decree is such that the entire decree must be and is vacated, and the cause remanded.

On remand the District should be given a reasonable time to elect whether it will restore the crossing so as to provide Landowners reasonable means of crossing the canal. If the District elects not to so restore the Gresham Crossing, a hearing should be had for the purpose of assessing the damages to the Landowners; and in that event, the damages would be the difference between the fair market value of the lands with such reasonable means of crossing the canal and the fair market value of the lands without the crossing. If the District elects to restore the crossing appellants may be entitled to damages for the temporary loss of use thereof, and the measure of damages in such event would be the difference between the rental value of the lands with the use of the crossing and the rental value without it, for the period the crossing was unusable.

This case is unusual in that, in the main, the contentions of the Landowners are correct, nevertheless, the case must be reversed. We think it proper to tax the costs one-half to the Landowners and one-half to the District.

Decree vacated and cause remanded.

*Lee, P.J.,* and *McElroy, Rodgers* and *Jones, JJ.,* concur.